## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

=====================================

ELIYO CHKECHKOV individually and
on behalf of all others similarly situated

Plaintiff,

-against-

FCI LENDER SERVICES, INC.

Defendant.

=====================================

### CLASS ACTION COMPLAINT

### *I.   Introduction*

Now comes Plaintiff, by and through his attorneys, and, for his Complaint alleges as follows:

1.     Plaintiff Eliyo Chkechkov brings this action to secure redress from unlawful collection practices engaged in by Defendant FCI Lender Services, Inc.

2.     Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 et seq. ("FDCPA").

3.     The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt. 15 U.S.C. Section 1692d, 1692e and 1692f.

## II.    Parties

4.      Plaintiff is a citizen of the State of New York who resides within this District.

5.      Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendant sought to collect from Plaintiff is a consumer debt.

6.      Upon information and belief, Defendant's principal place of business is located in Anaheim, California.

7.      Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

8.      Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

## III.    Jurisdiction and Venue

9.      This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## IV.    Allegations

11.     Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiff.

12.     Nationstar Mortgage, the previous loan servicer, sent the Plaintiff, a charge-off, a cancellation of debt by way of a Form 1099-C on August 3, 2015.

13.    The said August 3, 2015 letter from Nationstar Mortgage also stated that the amount of the debt at discharge was $133,505.59 and that the post-charge-off interest rate was 0.00 %.

14.    On or about April 7, 2017, Defendant FCI Lender Services, Inc. sent a collection letter to the Plaintiff Eliyo Chkechkov. (see attached exhibit)

15.    The said April 7, 2017 letter identified the principal balance as $133,505.59, as like the August 3, 2015 letter from Nationstar, however, the said April 7th letter also identified "Accrued Interest" of $58,547.76.

16.    The previous loan servicer, Nationstar Mortgage, had only demanded the entire accelerated amount of $133,505.59.

17.    When the entire amount of $133,505.59 became charged off, the option to collect interest was canceled.

18.    Despite the fact that Nationstar had specifically stated that interest has been waived on the said account, nevertheless, Defendant engaged in the collection of an illegal interest rate and balance.

19.    Nationstar's letter implied that the creditor of this debt had waived the right to collect interest.

20.    Nationstar's charged off the debt and ceased the collection of all interest.

21.    Defendant's attempts to collect interest on the account after all interest was waived and after the interest rate went to %0.00 percent violated the Fair Debt Collection Practices Act ("FDCPA").

22.    Defendant violated the FDCPA when it attempted to collect interest that was already waived.

23.     It is clear from the Nationstar account statements and from the charge-off statement that the creditor intended to waive the right to collect interest on Plaintiff's account. *See Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537 (N.D. Ill. 2012) (holding that plaintiff stated a claim under FDCPA by alleging that the creditor did not impose interest prior to the transfer to third party debt collection company).

24.     Nationstar and the original creditor took the decisive and unequivocal action to forgo the imposition of interest for strategic business reasons among other reasons.

25.     This practice also permitted the creditor, and the servicers to remove the account from the financial records and receive a bad debt tax deduction. See I.R.C. § 166(a)(2).

26.     This trade-off leads to the reasonable understanding that the creditor intended to waive interest.  In addition, Nationstar's statements explicitly stated that the accounts do not include past or present interest and Nationstar's account statements made it expressly clear that there is <u>zero</u> percent (0.00%) interest going forward.

27.     Both Nationstar and the original creditor knowingly and intentionally waived their right to interest and then transferred the 0.00% interest accruing account in order to take advantage of favorable accounting practices.

28.     Because Nationstar and the original creditor waived the interest, Defendant FCI could not retroactively impose interest for the period in which it did not service the accounts. Defendant FCI could not start to charge interest on an account that had a 0.00% interest rate.

29.     Defendant is in violation of the FDCPA for trying to create a monetary

interest out of thin air.

30.    Undoubtedly, Defendant could not impose interest for the period prior to its servicing of this account especially if the original creditor, and previous servicer Nationstar never imposed interest itself. In this circumstance, no such right to impose interest could ever have existed.

31.    The original creditor, and Nationstar implicitly and expressly waived interest on Plaintiff's account that Defendant FCI could not lawfully re-impose.

32.    Defendant FCI, unlawfully sought to collect interest that Nationstar and the original creditor had knowingly waived, which was both deceptive under §1692e and unfair in violation of § 1692f.

33.    Defendant FCI misrepresented its legal entitlement to collect waived interest, which misrepresented the amount of debt, in violation of § 1692e.

34.    Defendant FCI attempted the collection of an amount which included interest that was not expressly authorized by the agreement creating the debt, nor was it permitted by law." 15 U.S.C. §1692f(1)

35.    The original creditor, and Nationstar took voluntary actions demonstrating an intention to waive past and future interest charges. See. *Bunce v. Portfolio Recovery Assocs., LLC*, 2014 U.S. Dist. LEXIS 159679 (D. Kan. Nov. 12, 2014) (Recognizing that in cases where the creditors took voluntary actions demonstrating an intention to waive interest charges collection of such amounts after waiver would violate the FDCPA)

36.    Defendant FCI had neither a contractual, nor a statutory, right to claim that interest was accruing and would continue to accumulate on the debt.

37.    By falsely adding interest to the amount of the debt, Defendant made materially false statements, in violation of 15 U.S.C. § 1692e of the FDCPA.

38.    The law of New York has long held that a waiver is the voluntary relinquishment of a right. *Cowenhoven v. Ball,* 118 N.Y. 231 (N.Y. 1890)

39.    Waiver can be express or implied. An express waiver will be written or oral. An implied waiver is more difficult to prove. An implied waiver may be done "by acts from which an intention to waive may be inferred or from which a waiver follows as a legal result." *Titus v. Glens Falls Ins. Co.*, 81 N.Y. 410 (N.Y. 1880).

40.    Black's Law Dictionary (9th ed) defines implied waiver as a "…waiver of contractual rights…where the conduct or acts of the party charged with waiver have either: (1) clearly manifested an intention to waive the contract provision or term allegedly waived or (2) reasonably induced the non-waiving party to rely upon an apparent waiver or such term or provision".

41.    Defendant FCI, continued to pursue post-waiver interest on the charged-off debt.

42.    Defendant FCI violated sections §1692e and §1692f of the FDCPA for falsely representing the amount of the charged-off debt, using unfair and unconscionable means to collect the debt, and for threatening to take action which cannot legally be taken.

43.    Defendant FCI clearly evinced the creditor's intention to waive the right to charge interest, Defendant FCI violated the FDCPA by charging unauthorized interest after Nationstar, had already stated that the original creditor, waived its right to do so.

44.    Defendant, by charging interest on amount of the debt, where it had

neither a contractual, nor a statutory, right to do so, used unfair or unconscionable means to collect a debt, in violation of § 1692f of the FDCPA.

45.    Defendant's violations of § 1692f of the FDCPA render it liable for statutory damages, costs, and reasonable attorneys' fees.  See, 15 U.S.C. §1692k.

46.    Defendant attempted to collect interest on a debt when it was not entitled to do so.

47.    Defendant's conduct was deceptive and misleading in violation of 15 U.S.C. § 1692e.

48.    Defendant's conduct was also unfair and unconscionable in violation of 15 U.S.C. § 1692f.

49.    The Defendant had no right to collect any such interest from the Plaintiff.[1]

50.    Defendant violated 15 U.S.C. §§ 1692e(2)(A) and 1692e(10) for charging interest on the charged-off account when it was not authorized to do so.

51.    Upon information and belief, the said April 7, 2017 letter from Defendant FCI was the Defendant's initial communication with the Plaintiff.

52.    The letter stated in part: "As of the date of this Notice, the Debt is $193.586.36. Because of interest, late charges and other charges that may vary from

---

[1]*McDonald v. Asset Acceptance LLC,* No. 2: 11-cv-13080 (E.D. Mich. Aug. 7, 2013) ("Asset purchased the debts subject to the waiver, thereby precluding Asset from imposing interest or revoking the original creditors' waiver. As such, Asset's false statements regarding the total amount of the debt in the collection actions constitutes violations of § 1692e(2)(A) and § 1692f(1)."); *Stratton v. Portfolio Recovery* ([The Defendant] as [the Creditor's] assignee, moreover, "acquire[d] no greater right than was possessed by [its] assignor . . . but simply stands in the shoes of the latter."); *McDonald v. Richard J. Boudreau & Assocs., L.L.C.*, 2013 WL 3479273 (D.R.I. July 10, 2013) (Where a consumer can show that the creditor waived its right charge interest and the debt collector subsequently charged interest any such action would be a claim for misrepresenting the amount due in violation of the FDCPA); *Duffy v. Landberg*, 215 F.3d 871 (8th Cir.), *rehearing denied*, 2000 U.S. App. LEXIS 16039 (8th Cir. July 10, 2000) (Attempts to collect very small interest overcharges violated the plain language of § 1692f(1).); *Venes v. Prof'l Serv. Bureau, Inc.*, 353 N.W.2d 671 (Minn. Ct. App. 1984) (The collector/assignee violated § 1692f by charging interest on a debt to the Mayo Clinic which had a policy of not charging its patients interest.)

day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection."

53.    15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

54.    One such requirement is that the debt collector provide "the amount of the debt." 15 U.S.C. § 1692g(a)(1).

55.    A debt collector has the obligation not just to convey the amount of the debt, but to convey such clearly.

56.    15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

57.    The question of whether a collection letter is deceptive is determined from the perspective of the "least sophisticated consumer."

58.    While § 1692e specifically prohibits certain practices, the list is non-exhaustive, and does not preclude a claim of falsity or deception based on any non-enumerated practice.

59.    A collection letter is deceptive under 15 U.S.C. § 1692e if it can reasonably be read by the least sophisticated consumer to have two or more meanings, one of which is inaccurate.

60.    A collection letter is also deceptive under 15 U.S.C. § 1692e if it is reasonably susceptible to an inaccurate reading by the least sophisticated consumer.

61.    The letter fails to inform Plaintiff whether the amount listed is the actual amount of the debt due.

62.    The letter fails to inform Plaintiff whether the amount listed already includes accrued "interest."

63.    The letter fails to inform Plaintiff whether the amount listed already includes "late charges and other charges."

64.    The letter fails to advise Plaintiff what portion of the amount listed is principal.

65.    The letter fails to inform Plaintiff whether the amount listed will increase.

66.    The letter fails to inform Plaintiff what "late charges and other charges" might apply.

67.    The letter fails to inform Plaintiff if "late charges and other charges" are applied, when such "late charges and other charges" will be applied.

68.    The letter fails to inform Plaintiff if "late charges and other charges" are applied, what the amount of those "late charges and other charges" will be.

69.    The letter fails to inform Plaintiff of the nature of the "late charges and other charges."

70.    The letter fails to inform Plaintiff if there is accrued interest, what the amount of the accrued interest will be.

71.    The letter fails to inform Plaintiff if there is accrued interest, when such interest will be applied.

72.    The letter fails to inform Plaintiff if there is accrued interest, what the interest rate is.

73.    The letter fails to inform Plaintiff if there is accrued interest, the amount of money the amount listed will increase per day.

74.    The letter fails to inform Plaintiff if there is accrued interest, the amount of money the amount listed will increase per week.

75.    The letter fails to inform Plaintiff if there is accrued interest, the amount of money the amount listed will increase per month.

76.    The letter fails to inform Plaintiff if there is accrued interest, the amount of money the amount listed will increase per any measurable period.

77.    The letter, because of the aforementioned failures, would render the least sophisticated consumer unable to determine the amount of his or her debt.

78.    The least sophisticated consumer could reasonably believe that the debt could be satisfied by remitting the listed amount "as of the date of this Notice," at any time after receipt of the letter.

79.    The least sophisticated consumer could reasonably believe that the amount listed was accurate only on the date of the letter.

80.    If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the applicable interest rate.

81.    If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate what the amount of the accrued interest will be.

82.    If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate when such interest will be applied.

83.    If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the amount of money the amount listed will increase at any measurable period.

84.    If "late charges and other charges" are continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the nature of the "late charges and other charges."[2]

85.    The Defendant's failures are purposeful.

86.    In order to induce payments from consumers that would not otherwise be made if the consumer knew the true amount due, Defendant does not inform the consumer whether the amount listed will increase.

87.    In order to induce payments from consumers that would not otherwise be made if the consumer knew the true amount due, Defendant does not inform the consumer what "late charges and other charges" might apply.

88.    In order to induce payments from consumers that would not otherwise be made if the consumer knew the true amount due, Defendant does not inform the

---

[2] *Carlin v. Davidson Fink LLP*, 852 F.3d 207 (2d Cir. 2017); *Balke v. All. One Receivables Mgmt.*, No. 16-cv-5624(ADS)(AKT), 2017 U.S. Dist. LEXIS 94021, at *14 (E.D.N.Y. June 19, 2017) ("[T]he Collection Letter in this case refers with vagueness to "accrued interest or other charges," without providing any information regarding the rate of interest; the nature of the "other charges"; how any such charges would be calculated; and what portion of the balance due, if any, reflects already-accrued interest and other charges. By failing to provide even the most basic level of specificity in this regard, the Court "cannot say whether those amounts are properly part of the amount of the debt," for purposes of section 1692g.Carlin, 852 F.3d at 216. Further, as set forth in Carlin, without any clarifying details, the Collection Letter states only that these unspecified assessments may be added to the balance due, which the Court finds to be insufficient to "accurately inform[ ] the [Plaintiff] that the amount of the debt stated in the letter will increase over time.")

consumer when such "late charges and other charges" will be applied.

89.    Defendant failed to clearly and unambiguously state the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

90.    The Defendant's letter would likely make the least sophisticated consumer uncertain as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

91.    The letter would likely make the least sophisticated consumer confused as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

92.    Defendant's conduct constitutes a false, deceptive, and misleading means and representation in connection with the collection of the debt, in violation of 15 U.S.C. § 1692e.

93.    The letter can reasonably be read by the least sophisticated consumer to have two or more meanings concerning the actual balance due, one of which must is inaccurate, in violation of 15 U.S.C. § 1692e.

94.    Defendant's conduct violates 15 U.S.C. §§ 1692g(a)(1) and 1692e.

95.    In the first paragraph of the said letter, the Defendant stated: "The servicing of your Promissory Note is being transferred, effective 04/03/2017.  This means that after this date, a new Servicer will be collecting your Promissory Note payments from you. **Nothing else about your Promissory Note will change**." (emphasis added)

96.    However, on the last page of the letter titled "BORROWER WELCOME LETTER" was stated: "**PLEASE BE ADVISED YOUR LOAN TERMS MAY BE ADJUSTED ONCE ALL LOAN DOCUMENTS HAVE BEEN RECEIVED AND/OR**

REVIEWED."

97.    The said statements are entirely deceptive and contradictory and render the Defendant's Validation Notice defective.

98.    Such language results in the consumer to be unable to deduce as to what the exact terms of the loan agreement are.

99.    The said two statements are deceptive and unfair as loan terms cannot be adjusted or changed subsequent to the loan documents having been reviewed.

100.    The least sophisticated consumer who reads such conflicting statements would believe that the loan terms could in fact be adjusted.

101.    The second statement contradicts the first statement at the beginning of the letter which states that: "**Nothing else about your Promissory Note will change.**"

102.    At no time upon the debt collector receiving the account from the creditor, can the loan terms be adjusted.

103.    Said language can be reasonably read to have two or more different meanings, one of which is false.[3]

104.    In addition, The Margolin and Weinreb Law Group, LLP, and West Coast Servicing, Inc. have respectively been communicating with the Plaintiff, each in an attempt to collect on the said loan.

105.    On September 12th 2017 West Coast Servicing, Inc. sent plaintiff a letter

---

[3] *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25 (2d Cir. 1989) (Because the collection notice was reasonably susceptible to an inaccurate reading, it was deceptive within the meaning of the Act.); *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) (Collection notices are deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. N.Y. 1996) (A collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate. The fact that the notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10) of the Act.)

seeking to collect on the same debt on that same day FCI sent plaintiff a letter seeking to collect on the same debt.

106.    The Margolin and Weinreb Law Group, LLP also sent plaintiff a letter in September seeking to collect on the same debt.

107.    FCI, West Coast Servicing, Inc. and The Margolin and Weinreb Law Group, LLP are all simultaneously trying to collect on this identical debt.

108.    Both West Coast Servicing, Inc. and Margolin and Weinreb have communicated in loan statements that they have mailed to the Plaintiff that if the Plaintiff makes payments to Defendant FCI, he will not be paying his debt.

109.    West Coast Servicing, Inc. told plaintiff that they are the only one authorized to collect on this debt and that FCI is collecting on a fictitious debt.

110.    However, the Defendant FCI itself has impressed upon the Plaintiff that it alone is the collector of the said debt.

111.    West Coast Servicing and Margolin and Weinreb are threatening foreclosure proceedings against the Plaintiff and each company is claiming the exclusive right to collect on the outstanding debt.

112.    West Coast Servicing and Margolin and Weinreb have repeatedly stated that Defendant FCI was collecting on a fictitious debt.

113.    FCI, West Coast Servicing and Margolin and Weinreb created, out of thin air, two separate debts when in fact, there was only one debt.

114.    FCI has created a new fictitious debt in violation of the FDCPA.

115.    The least sophisticated consumer is left to worry about being defrauded or paying the incorrect servicer and continuing to have an outstanding debt.

116. The least sophisticated consumer would conclude that he owes this debt twice and he must pay two or more separate companies.

117. The least sophisticated consumer would never know who to make payment to on this debt.

118. Even if Plaintiff would pay FCI the amount FCI was requesting, West Coast Servicing and Margolin and Weinreb still claim he owes them an additional one hundred and thirty five thousand dollars.

119. Such actions were both deceptive under §1692e and unfair in violation of § 1692f.

120. Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

121. Plaintiff suffered actual harm by being the target of Defendant's misleading debt collection communications.

122. The Plaintiff alleges and avers that Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

123. The Plaintiff alleges and avers that Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

124. The Plaintiff alleges and avers that Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

125. The Plaintiff alleges and avers that Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to the Defendant's collection efforts.

126.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Plaintiff alleges and avers that Defendant's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

127.    These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

128.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment. Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including, declaratory relief, and damages.

### V.    Class Allegations

129.    This action is brought as a class action. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

130.    The identities of all class members are readily ascertainable from the records of FCI Lender Services, Inc. and those business and governmental entities on whose behalf it attempts to collect debts.

131.    Excluded from the Plaintiff's Class is the Defendant and all officers, members, partners, managers, directors, and employees of FCI Lender Services, Inc.,

and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

132.    There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the FDCPA.

133.    The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

134.    The Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause them not to vigorously pursue this action.

135.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)      **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

(b)      **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The principal

issues are whether the Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the FDCPA.

(c)     **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Class defined in this complaint have claims arising out of the Defendant's common uniform course of conduct complained of herein.

(d)     **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

(e)     **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendant who, on information and belief, collects debts throughout the United States of America.

136.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate provisions of the FDCPA, and is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

137.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

138.    Further, Defendant has acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

139.    Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

### VI.    Cause of Action

140.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

141.    This cause of action is brought on behalf of Plaintiff and the members of a class of whom Defendant's records reflect resided in the State of New York:

    a) who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff, within one year prior to the date of the

within complaint up to and including the date of the filing of this complaint;

b) the collection letter was sent to a consumer seeking payment of a personal debt;

c) the collection letter was not returned by the postal service as undelivered;

d) the Plaintiff alleges and avers that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10) and 1692f.

142.   This cause of action is brought on behalf of Plaintiff and the members of an additional class of whom Defendant's records reflect resided in the State of New York:

a) who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff, within one year prior to the date of the within complaint up to and including the date of the filing of this complaint;

b) the collection letter was sent to a consumer seeking payment of a personal debt;

c) the collection letter was not returned by the postal service as undelivered;

d) the Plaintiff alleges and avers that the letter contained violations of 15 U.S.C. §§ 1692e and 1692g(a)(1)of the FDCPA for the use of any false representation or deceptive means to collect or attempt to collect any debt, for misrepresenting the amount of the debt owed by the Plaintiff and for failing to accurately state the amount of the debt in the initial communication.

### VII.    Violations of the Fair Debt Collection Practices Act

143.    The Defendant's actions as set forth above in the within complaint violates the FDCPA.

144.    Because the Defendant violated the FDCPA, the Plaintiff and the members of the class are entitled to damages in accordance with the FDCPA.

145.    As a direct and proximate result of these violations of the above FDCPA violations, Plaintiff and class members have suffered harm and are entitled to preliminary and permanent injunctive relief, and to recover statutory damages, costs and attorney's fees.

### VIII.    Jury Demand

146.    Plaintiff demands a trial by jury.

### IX.    Prayer for Relief

147.    Plaintiff demands the following relief:

WHEREFORE, the Court should enter Judgment in favor of Plaintiff and against Defendant for:

1)  Statutory damages under the FDCPA, 15 U.S.C. § 1692(k);

2)  Attorney fees, litigation expenses and costs of suit;

3)  An order enjoining and directing Defendant to comply with the FDCPA in its debt collection activities; and

4)  Such other and further relief as the Court deems proper.

Dated:Brooklyn, New York
October 24, 2017

/s/ David Palace_____
**Law Offices of David Palace** (DP 3855)
383 Kingston Ave. #113
Brooklyn, New York 11213
Telephone: 347-651-1077
Facsimile: 347-464-0012

04/07/2017

**FCI Lender Services, Inc.**

*Loan Servicing • Specialty Servicing • Default*

Phone: 800-931-2424    Fax: 714-282-5775

## NOTICE OF SERVICING TRANSFER

ELIYO CHKECHKOV
Redacted

Loan #: Redacted 776
Property: **Redacted**

Dear ELIYO CHKECHKOV:

The servicing of your Promissory Note is being transferred, effective 04/03/2017. This means that after this date, a new Servicer will be collecting your Promissory Note payments from you. Nothing else about your Promissory Note will change.

West Coast Servicing, Inc. is now collecting your payments. West Coast Servicing, Inc. will stop accepting payments received from you on 04/03/2017. FCI Lender Services, Inc. will collect your payments going forward. FCI Lender Services, Inc. will start accepting payments received from you on 04/03/2017.

**Send all payments due on or after 04/03/2017 to FCI Lender Services Inc. at this address: PO BOX 27370, Anaheim, CA 92809-0112.**

If you have any questions for either your present servicer, West Coast Servicing, Inc., or your new Servicer FCI Lender Services, Inc. about your Promissory Note or this transfer, please contact them using the information below:

| Previous Servicer: | Current Servicer: |
|---|---|
| West Coast Servicing, Inc. | FCI Lender Services, Inc. |
| Customer Service | Customer Care Department |
| 18831 Von Karman Ave, Ste 380 | Post Office Box 27370 |
| IRVINE, CA, 92612 | Anaheim Hills, California 92809-0112 |
| 866-572-7786 (toll free or collect) | (800) 931-2424, x651 (toll free) |
| Hours of Operation: | Hours of Operation |
| Monday - Friday | Monday – Friday |
| 08:30 AM - 05:00 PM (Pacific Standard Time) | 08:00 AM – 05:00 PM (Pacific) |

Important Note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may not affect your insurance because we have not serviced mortgage life or disability premiums. However, if you wish to retain optional insurance, we would suggest that you contact your current optional product service provider or your Lender.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer on or before its due date may not be treated by the new Servicer as late, and a late fee may not be imposed on you.

Sincerely,
Customer Care Department
FCI Lender Services

**FCI Lender Services, Inc.**

*Loan Servicing • Specialty Servicing • Default*

Phone: 800-931-2424   Fax: 714-282-5775

## BORROWER WELCOME LETTER

ELIYO CHKECHKOV

**Redacted**

Re Loan Number: Redacted 776

Property: Redacted Redacted Redacted Redacted

Dear ELIYO CHKECHKOV:

**Welcome to FCI Lender Services, Inc. ("FCI") Loan servicing!** FCI is your Servicing Agent and is servicing your Promissory Note on behalf of your Lender/Creditor, **West Coast Servicing, Inc.** (The "Creditor"). FCI is also a Debt Collector. Your Creditor has authorized FCI to process and collect your scheduled Promissory Note payments according to your Promissory Note and Security Instrument. A *Payment Statement* will be mailed or emailed to you on a regular basis. Please send your check with your account number written on it, plus the payment coupon from your statement (unless you have established an Automated Payments (ACH) debit program with FCI). You should review each *Payment Statement* carefully for accurate loan information. At year-end, an interest statement (IRS Form 1098) will be mailed to you for tax purposes. To view your account, and for other payment options, visit www.trustfci.com and click on "Borrower Payment Options" located at the top of FCI's web page.

### IMPORTANT BANKRUPTCY INFORMATION

**IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.**

Your Creditor has provided FCI the following information regarding the Total Amount Due on your Promissory Note (the "Debt").

| | | | |
|---|---|---|---|
| Deferred Principal Balance: | $ 0.00 | Principal Balance: | $ 133,505.59 |
| Deferred Unpaid Interest: | $ 0.00 | Accrued Interest: | $ 58,547.76 |
| Deferred Late Charges: | $ 0.00 | Accrued Late Charges: | $ 1,533.01 |
| Deferred Loan Charges: | $ 0.00 | Other Amounts Due: | $ 0.00 |
| | **Total Debt:** | **$ 193,586.36** | |

**VALIDATION OF DEBT:** Unless you, the consumer, within thirty days after receipt of this notice, dispute the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by FCI as the Debt Collector. If you notify FCI in writing, within thirty days after receipt of this notice, that you dispute the Debt or any portion of the Debt, we will, as required by law, obtain and mail to you verification of the Debt and/or a copy of a Judgment against you. Upon your written request within the thirty-day period, FCI as the Debt Collector will provide you, as the consumer, with the name and address of the original creditor, if different from the current Creditor.

As of the date of this Notice, the Debt is $ 193,586.36. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

**PLEASE BE ADVISED YOUR LOAN TERMS MAY BE ADJUSTED ONCE ALL LOAN DOCUMENTS HAVE BEEN RECEIVED AND/OR REVIEWED.**

**IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

If you have any questions regarding the above information, please write or call FCI's Customer Care Center toll-free number at 1-800-931-2424 (x651) during normal business hours (Monday-Friday, 8:00 AM – 5:00 PM, PST). When calling, please reference your loan number.

Sincerely,
Customer Care Department
FCI Lender Services