## LAW OFFICES OF DAVID PALACE
### 383 KINGSTON AVE. #113
### BROOKLYN, NY 11213
### TEL: (347) 651-1077
### FAX: (347) 464-0012
### EMAIL: DAVIDPALACE@GMAIL.COM

May 1, 2018

VIA ELECTRONIC FILING

Hon. Frederic Block

United States District Court

Eastern District of New York

Re:     *Chkechkov v. FCI Lender Services Inc*
        Docket No.   1:17-cv-06195-FB-RLM

Dear Judge Block,

I represent the plaintiff in the above matter. I am filing this motion to enforce the settlement reached on April 26, 2018 between the parties and the Court appointed mediator. The parties were unable to settle this case at the initial conference, and the court sent this this case to court annexed mediation. On April 26th 2018 during the initial mediation call with the court appointed mediator, defendants counsel informed the mediator that the defendant has accepted plaintiffs offer to settle, and that this case is settled per the terms of plaintiff's emails. Additionally during the conference call with the court appointed mediator, defendants counsel spelled out the essential terms of the settlement agreement. On April 30th 2018 the defendant informed this court and confirmed in writing to this court's ADR administrator that the "Matter has been settled and is being reduced to writing." (**Exhibit A**)

As can be seen from the fillings in this case. Docket No. 12 (Amended Complaint, **Exhibit B**) and Plaintiff's reply to Defendants motion, Docket No. 13 (**Exhibit C**). The defendant has made multiple promises and agreements to the plaintiff in this case and has so far fraudulently violated each one of those agreements. On multiple occasions defendant has intentionally made false assurances and written agreements that it subsequently violated. In fact defendant made those agreements knowing that they never intended to honor them. The defendant falsely stated in writing that it would stop collecting on the debt when it knew that it would continue to collect on the debt. (**Exhibit B** and **Exhibit C**)

After plaintiff saw that defendant could not be trusted plaintiff informed defendant that defendant would need to file a satisfaction of mortgage if they wanted to engage in settlement discussions. Defendant then yet again agreed in writing that they would file a satisfaction of mortgage prior to any settlement discussions. The defendant sent plaintiff a copy of a satisfaction of mortgage that it falsely claimed it recorded. (**Exhibit D**) The defendant falsely informed the court appointed mediator that they filed a satisfaction of mortgage and that it would show up on ACRIS any day.  Defendant informed the court mediator that this case is settled when it knowingly intended to violate the terms of the settlement. Defendant after settling the case spoke to plaintiffs' counsel and admitted that they did not in fact file any satisfaction of mortgage and that they are not going to honor the settlement and that they would instead agree to settle for $2,500.

 Defendant's fraud in this case is extremely troubling especially in light of the fact that settlement discussions broke down multiple times during the pendency of this litigation since defendant intentionally

and deceptively made agreements with plaintiff only to violate those agreements. In fact plaintiff specifically informed defendant that plaintiff will only agree to settlement discussions in writing and plaintiff stopped all oral settlement discussions due to defendants multiple lies and misrepresentations.

Plaintiff filed an amended complaint on March 23, 2018, Docket No. 12 (**Exhibit B**)  Plaintiff alleged in his amended complaint that Defendant violated multiple provisions of the FDCPA such as collecting on an invalid debt, contacting a consumer who is known to be presented by counsel and violating previous agreements made in writing. Prior to attending court appointed mediation Defendant informed this court (Docket No. 11) that they did not need to make any assurances to plaintiff, that they did not do anything wrong, and that it was done in error. Defendant also informed this court that they would seek sanctions against plaintiff. Additionally defendant's counsel informed plaintiff's counsel multiple times that they intended to litigate this case since they believed that plaintiff's claim was without merit. Defendants counsel informed plaintiffs' counsel multiple times that they did not violate the FDCPA. Defendants counsel also threatened plaintiff counsel that they would seek sanctions against plaintiff and plaintiffs counsel.

Plaintiff's counsel informed defendants counsel that they did not want to settle and that plaintiff had multiple reasons why he wanted to proceed with his case. Further, plaintiff's counsel informed defendants counsel on multiple occasions that he doubted that the case would settle especially since defendants did not want to acknowledge that the claims had merit. Despite the fact that defendant claimed it would seek sanctions and litigate the merits of this case, defendant informed plaintiff that litigation as well as mediation would be very expensive that that even though they did not think they did anything wrong they were ready to discuss a compromise. Settlement discussions ensued, and on April 26, 2018, during a telephone conference with the courts appointed mediator the case settled. On April 30th 2018 Defendant informed this court via email that this matter has been settled.

Defendant as it has done to plaintiff multiple times in the past, has yet again informed plaintiffs' counsel that it does not intend to honor the settlement agreement. Being that defendant had violated multiple agreements it had with plaintiff as can be seen from the different docket fillings in this case. (**Exhibit B and C**) plaintiff counsel was suspicions that defendant would try and pull another fraud on plaintiff. Therefore during the conference call with the court ordered meditator Plaintiff specifically had defendant spell out the terms of the settlement agreement for the court mediator to hear since plaintiff was weary of defendant's previous misrepresentations and frauds. Defendant also assured the mediator that he would put in writing all the agreed upon terms discussed on the phone call by Monday April 30th 2018.

The defendant in this case has been lying to this court and has been lying to the plaintiff since the start of the case and none of those lies have helped the defendant at all. The record in this case casts a very disturbing image of the defendants. After plaintiff filed his initial complaint defendant filed a false answer denying that Nationstar sent the plaintiff a 1099-C that expunged the debt. At the initial conference when Judge Mann tried to settle this case defendants claimed that plaintiffs claim was bogus and that there was no 1099-C ever sent to the client. Defendant then falsely stated they will stop collecting on the debt however they did not honor that agreement and still attempted to collect on the debt (**Exhibit B**)

On April 11, 2018, Defendant then falsely stated via email that it sent for recording a satisfaction of mortgage. (**Exhibit D**) On April 26th 2018 Defendant further assured the court appointed mediator that they filed a satisfaction of Mortgage. Defendant again falsely informed plaintiff and the court mediator, and then this court that the case settled.

However after this case settled (and regretfully as expected) instead of sending the agreed upon terms in writing on April 30th 2018 the defendant instead informed plaintiff's counsel that they will not honor the settlement agreement since they now invented a fictitious letter saying that around a year after Nationstar sent the plaintiff a 1099-C they sent plaintiff a letter that retracted the 1099-C.

Although defendant knows that this fraudulent fictitious letter was never sent to plaintiff the defendant knows that it's nonsensical to argue that one can retract a 1099-C a year after it was sent. In fact according to the IRS regulations a creditor would need to send a corrected 1099-C before the taxes are due, not a mere retraction letter.

It is undisputed that the creditor did not send plaintiff a corrected 1099-C in this case. Defendant further knows that a creditor who only sends an unrecognized retraction letter almost a year later is a nullity and has no legal effect per IRS regulations. Of course plaintiff is not debating the merits of this preposterous argument since this case already settled in writing, plaintiff is just pointing out defendants ludicrosity. Defendant knows that a creditor cannot retract a 1099-C a year later by sending a mere letter of retraction, but most importantly defendant knows that this case settled and defendant has stated in writing that this case settled. The defendant cannot keep on making agreements and violating them with complete disregard for the law.

The settlement agreement reached in this case constitutes a contract that is binding and irrefutable and the parties are bound to the terms of the contract even if defendant now realizes that it will indeed have to payout on the settlement and therefore they now have a change of heart (after finding out that the original creditor will not indemnify them) between the time of the agreement to the terms of the settlement and the time it is reduced to writing. *Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007) ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a choice simply because his assessment of the consequences was incorrect.")

Defendants counsel now claims that after settling this case the defendant went to the original creditor to get reimbursed for this settlement from the initial creditor who sold them this invalid debt. Defendant claims that the original creditor will not reimburse them. However even if this is true and defendants assessment of the consequences was incorrect this error has no bearing on this case especially after this case was settled in writing with the court appointed mediator.

Settlement agreements are favored by the courts, which have inherent power to enforce such agreements summarily, even if they are not reduced to writing. M*eetings & Expositions. Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974); *Aro Corp. v. Allied Witan Co*., 531 F.2d 1368, 1371 (6th Cir. 1976); *Autera v. Robinson.* 419 F.2d 1197 (D.C. Cir. 1969); DiMartino v. City of Hartford. 636 F. Supp. 1241, 1244 (D. Conn. 1986); *MacDonald v. Dragone Classic Motor Cars.* 2003 U.S. Dist. LEXIS 14587 (D. Conn. Apr. 29, 2003) ("[O]once reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing); *Dap Fin. Mgmt. Co. v. Mor-Fam Elec*., 59 Conn. App. 92, 97-98, 755 A.2d 925 (2000) ("The test of disputation, however, must be applied to the parties at the time they entered into the alleged settlement. To hold otherwise would prevent any motion to enforce a settlement from ever being granted").

The settlement in this case was with the court appointed mediator. Defendant further informed this court that the matter was settled. No further writing was needed to effectuate it. *Massey v. Town of Branford*, 115 Conn. App. 153, 164, 971 A.2d 838 (2009) ("Notwithstanding the additional documents that the parties did not agree on, such as the release, the settlement agreement, alone, was enforceable"); *Aquarion Water Co. v. Beck Law Prods. & Forms. LLC*. 98 Conn. App. 234, 239, 907 A.2d 1274 (2006) ("Although the parties did not sign the settlement agreement, that fact by itself is not significant"); *Dyer v. Bilaal* 983 A.2d 349, 359 (D.C. 2009) ("Moreover, failing to agree upon the form and terms of a memorial does not invalidate an enforceable contract previously made between parties"); *Dependahl v. Falstaff Brewing Co*., 448 F. Supp. 813 (E.D. Mo. 1978);*Read v. Baker*. 438 F. Supp. 737 (D. Del. 1977). Summary enforcement is the norm. *Meetings & Expositions, Inc.*, 490 F.2d at 717.

In our circuit it is clear that, in accord with federal precedent, the Court is authorized to summarily enter judgment in accordance with a settlement agreement. See also *Audubon Assoc. Ltd. Partnership v. Barclay & Stubbs*, 225 Conn. 804, 626 A.2d 729 (1993):

"A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. *Gatz v. Southwest bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988); see also J. Fischer, "Enforcement of Settlements: A Survey," 27 Tort & Ins. L.J. 82, 92 (1991). "Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." *Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir. 1986); see also *Janneh v. GAF Corporation*, 887 F.2d 432, 436-37 (2d Cir. 1989), cert. denied, 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990);*Meetings & Expositions, Inc. v. Tandy Corporation*, 490 F.2d 714, 717 (2d Cir. 1974).

In *Janus Films, Inc. v. Miller, supra*, 583, Judge Newman, writing for the majority of the Second Circuit Court of Appeals, noted the important policy behind a court's power to enforce summarily a settlement agreement: "Due regard for the proper use of judicial resources requires that a trial judge proceed with entry of a settlement judgment after affording the parties an opportunity to be heard as to the precise content and wording of the judgment, rather than resume the trial and precipitate an additional lawsuit for breach of a settlement agreement. This authority should normally be exercised whenever settlements are announced in the midst of a trial."

Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to avoid a trial. "The asserted right not to go to trial can appropriately be based on a contract between the parties." *Janneh v. GAF Corporation, supra*, 436. "The essence of that right [cannot] be vindicated effectively after the trial has occurred." Id. To hold that a jury trial is a necessary predicate to enforcement of a settlement agreement would undermine the very purpose of the agreement. We hold that a trial court may summarily enforce a settlement agreement within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement. The defendants did not have a right to a jury trial in this case and the trial court properly rendered judgment in accordance with the settlement contract."

Id. at 811-12.

Once an agreement is reached, the parties cannot rescind the same. *Kelly v. Greer*, 365 F.2d 669 (3d Cir. 1966). The Court enforces the agreement because the parties are bound by its terms. *Kohl Indus. Park v. County of Rockland*, 710 F.2d 895, 903-04 (2d Cir. 1983). "[A] litigant can no more repudiate a compromise agreement than he could disown any other binding contractual relationship." *Dacany v Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978).

"Courts are wary of disturbing settlements, because they represent compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence." *Anita Foundations v. ILGWU Nat'l Retirement F*., 902 F.2d 185, 190 (2d Cir. 1990).

<u>In this case the defendant informed this court in writing that this case has settled</u>. (**Exhibit A**) This court has specifically stated that in such circumstances "The settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to

writing." Id. Accordingly, the settlement entered into on the record is binding on the parties and enforceable." *Toler v. Baker, McEvoy, Morrissey & Moskovits, P.C.*, 2015 U.S. Dist. LEXIS 125148, *3 (Block J.,)

Thank you for the Court's consideration of the foregoing.

Respectfully Submitted,

LAW OFFICES OF DAVID PALACE
By:___s/David Palace_____
David Palace

cc: Alan Smikun, Esq. (via ECF)

EXHIBIT A

 Gmail

**David Palace <davidpalace@gmail.com>**

---

## Chkechkov v. FCI Lender Services Inc 1:17-cv-06195-FB-RLM

3 messages

---

**Robyn_Weinstein@nyed.uscourts.gov** <Robyn_Weinstein@nyed.uscourts.gov>          Mon, Apr 30, 2018 at 2:23 PM
To: davidpalace@gmail.com, alansm@nyfclaw.com

Dear Counsel:

Please provide a status update regarding scheduling the mediation in the above captioned case.   Please do not hesitate to contact me if you need any assistance.

Sincerely,

Robyn

**Robyn Weinstein, Esq.**
ADR Administrator
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
(718) - 613-2578
robyn_weinstein@nyed.uscourts.gov

---

**Alan Smikun** <alansm@nyfclaw.com>          Mon, Apr 30, 2018 at 2:36 PM
To: "Robyn_Weinstein@NYED.USCOURTS.GOV" <Robyn_Weinstein@nyed.uscourts.gov>, "davidpalace@gmail.com"
<davidpalace@gmail.com>
Cc: Alan Weinreb <Alan@nyfclaw.com>

Good Afternoon,


Matter has been settled and is being reduced to writing.


Best,




**ALAN SMIKUN, ESQ.**

**ASSOCIATE**


**THE MARGOLIN & WEINREB LAW GROUP, LLP**

*(formerly known as Pitnick & Margolin, LLP and The Law Offices of Alan Weinreb, P.C.)*
Your New York Foreclosure, Bankruptcy, Loss Mitigation, Eviction, REO and Real Estate Attorneys

165 Eileen Way, Suite 101

Syosset, NY 11791
(516) 921-3838, Ext. 321
F (516) 921-3824

www.nyfclaw.com

**WE ARE A DEBT COLLECTOR AND ARE ATTEMPTING TO COLLECT A DEBT.    ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**


*** This e-mail message is subject to the Electronics Communications Privacy Act, 18 U.S.C. §§ 2510-2521, and the information contained in this e-mail is confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any review, re-transmission  dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is strictly prohibited. If you have received this communication in error, please immediately notify me and delete the original message without making any copies. ***
ANY TRANSMITTAL SENT TO A CLIENT OF THE SENDER OR THE FIRM SHALL BE DEEMED AS PROTECTED



**From:** Robyn_Weinstein@NYED.USCOURTS.GOV [mailto:Robyn_Weinstein@NYED.USCOURTS.GOV]
**Sent:** Monday, April 30, 2018 2:24 PM
**To:** davidpalace@gmail.com; Alan Smikun <alansm@nyfclaw.com>
**Subject:** Chkechkov v. FCI Lender Services Inc 1:17-cv-06195-FB-RLM

[Quoted text hidden]

---

Robyn_Weinstein@nyed.uscourts.gov <Robyn_Weinstein@nyed.uscourts.gov>          Mon, Apr 30, 2018 at 2:38 PM
To: Alan Smikun <alansm@nyfclaw.com>
Cc: Alan Weinreb <Alan@nyfclaw.com>, "davidpalace@gmail.com" <davidpalace@gmail.com>

Thank you.  Did the matter settle prior to mediation?

Best,

Robyn

**Robyn Weinstein, Esq.**
ADR Administrator
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
(718) - 613-2578
robyn_weinstein@nyed.uscourts.gov


| | |
|---|---|
| From: | Alan Smikun <alansm@nyfclaw.com> |
| To: | "Robyn_Weinstein@NYED.USCOURTS.GOV" <Robyn_Weinstein@NYED.USCOURTS.GOV>, "davidpalace@gmail.com" <davidpalace@gmail.com> |
| Cc: | Alan Weinreb <Alan@nyfclaw.com> |
| Date: | 04/30/2018 02:36 PM |
| Subject: | RE: Chkechkov v. FCI Lender Services Inc 1:17-cv-06195-FB-RLM |

EXHIBIT B

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

=====================================

ELIYO CHKECHKOV individually and
on behalf of all others similarly situated

                                                    1:17-cv-06195-FB-RLM

                        Plaintiff,

            -against-

FCI LENDER SERVICES, INC.

                        Defendant.

=====================================

## AMENDED CLASS ACTION COMPLAINT

### I.    Introduction

Now comes Plaintiff, by and through his attorneys, and, for his Complaint alleges as follows:

1.    Plaintiff Eliyo Chkechkov brings this action to secure redress from unlawful collection practices engaged in by Defendant FCI Lender Services, Inc.

2.    Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 et seq. ("FDCPA").

3.    The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt. 15 U.S.C. Section 1692d, 1692e and 1692f.

## II. Parties

4.    Plaintiff is a citizen of the State of New York who resides within this District.

5.    Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendant sought to collect from Plaintiff is a consumer debt.

6.    Upon information and belief, Defendant's principal place of business is located in Anaheim, California.

7.    Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

8.    Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

## III. Jurisdiction and Venue

9.    This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## IV. Background Facts

11.    The Fair Debt Collection Practices Act prohibits professional debt collectors from using "false, deceptive, or misleading representations or means in connection with the collection of any debt" and from "using unfair or unconscionable

means to collect" a debt. 15 U. S. C. §§1692e, 1692f. A debt collector that attempts to collect a canceled debt has violated all of these prohibitions.

12.     Professional debt collectors have built a business out of buying canceled, stale and expunged debt, using foreclosure proceedings to collect it, and hoping that no one notices that the debt is too old to be enforced by the courts. This practice is unfair, unconscionable, it is also false, deceptive and misleading all in violation of §1692e and 1692f.

13.     A debt is deemed expunged and extinguished under the IRS regulations when a creditor stops collection activity after a defined period pursuant to an established business practice.

14.     A creditor typically does so in order to take advantage of IRS rules allowing tax deductions for "bad debts" (www.irs.gov/publications/p535/ch10.html).

15.     Such premeditated actions by a creditor, in turn, render it inequitable to allow it or another third party to belatedly enforce the extinguished debt after it received the tax benefit of the "charge-off." IRS, Publication 4681 (2016),

16.     Canceled Debts, Foreclosures, Repossessions, and Abandonments (last updated September 11, 2017), www.irs.gov/publications/p4681. States that code "G" discontinues the debt the Form 1099-C section "Instructions for Debtor," box 6 states code "G" means "[d]ecision or policy to discontinue collection."

17.     The Form 1099-C section "Instructions for Creditor," also references Instructions for Forms 1099-C. These instructions state a creditor enters code "G" in box 6 to indicate "[a] discharge of indebtedness because of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt.

18.     Americans owe trillions of dollars in consumer debt to creditors—credit card companies, schools, and car dealers, among others. See *Fed. Reserve Bank of N. Y., Quarterly Report on Household Debt and Credit 3 (2017)*. Most people will repay their debts, but some cannot do so.

19.     The debts they do not pay are increasingly likely to end up in the hands of professional debt collectors—companies whose business it is to collect debts that are owed to other companies. See *Consumer Financial Protection Bur., Fair Debt Collection Practices Act: Annual Report 2016, p. 8*. Debt collection is a lucrative and growing industry. Last year, the Nation's 6,000 debt collection agencies earned over $13 billion in revenue. Ibid.

20.     Although many debt collectors are hired by creditors to work on a third-party basis, more and more collectors and servicers also operate as "debt buyers"—purchasing debts from creditors outright and attempting to collect what they can, with the profits going to their own accounts. *See FTC, The Structure and Practices of the Debt Buying Industry 11-12 (2013)* (FTC Report); CFPB Report 10. Debt buyers now hold hundreds of billions of dollars in consumer debt; indeed, a study conducted by the Federal Trade Commission (FTC) in 2009 found that nine of the leading debt buyers had purchased over $140 billion in debt just in the previous three years. *FTC Report, at i-ii, T-3* (Table 3).

21.     Because creditors themselves have given up trying to collect the debts they sell to debt buyers, they sell those debts for pennies on the dollar. Id., at 23. The older the debt, the greater the discount: While debt buyers pay close to eight cents per dollar for debts under three years old, they pay as little as two cents per dollar for debts

greater than six years old, and "effectively nothing" for debts greater than 15 years old. Id., at 23-24. These prices reflect the basic fact that older debts are harder to collect. As time passes, creditors write off the debt and consumers move or forget that they owe the debts; creditors have more trouble documenting the debts and proving their validity; and debts begin to fall within state statutes of limitations—time limits that "operate to bar a plaintiff's suit" once passed. CTS Corp. v. Waldburger, 573 U. S., 134 S. Ct. 2175, 189 L. Ed. 2d 62, 64 (2014). Because a creditor and a debt collector cannot enforce a time-barred or expunged debt in court, the debt is inherently worth nothing.

22.    But statutes of limitations and the expungement of debt have not deterred debt buyers and debt collectors. For years, they have filed suit in state courts to collect even extinguished debts too old to be enforced by those courts. See *Holland, The One Hundred Billion Dollar Problem in Small-Claims Court, 6 J. Bus. & Tech. L. 259, 261 (2011).*

23.    Importantly, the debt buyers' only hope in these cases is that consumers will fail either to either remember that the debt was expunged or to invoke the statute of limitations or to respond at all.

24.    Most consumers fail to defend themselves in court, in fact, according to the FTC, over 90% fail to appear at all. FTC Report 45. The result is that debt buyers have won "billions of dollars in default judgments" simply by filing suit and betting that consumers will lack the resources to respond. Holland, supra, at 263.

25.    The FDCPA's prohibitions on "misleading" and "unfair" conduct have largely beaten back this particular practice. Every court to have considered the

question has held that a debt collector that files suit in court to collect a expunged debt violates the FDCPA. See <u>Phillips v. Asset Acceptance, LLC</u>, 736 F.3d 1076, 1079 (7th Cir. 2013); <u>Kimber v. Federal Financial Corp.</u>, 668 F. Supp. 1480, 1487 (MD Ala. 1987); see also <u>Midland Funding, LLC v. Johnson</u>, 137 S. Ct. 197 L. Ed. 2d, at 796 (majority opinion) (citing other cases).

26. The FDCPA prohibits professional debt collectors from engaging in "unfair" and "unconscionable" practices. 15 U. S. C. §1692f. Misrepresenting the legal status of a debt and filing a foreclosure case in state court for debt that a collector knows to be forgiven is just such a practice.

27. The practices of filing suit in state courts to collect debts that they know are canceled or time-barred is precisely the type of practice that the FDCPA seeks to extirpate. Every court to have considered this practice holds that it violates the FDCPA.

28. Debt buyers' efforts to pursue extinguished stale debt in ordinary civil litigation also entraps debtors into forfeiting their time defenses altogether. When a debt collector sues or threatens to sue to collect a large debt, many consumers respond by offering a small partial payment to forestall suit. In many States, a consumer who makes an offer like this has—unbeknownst to him—forever given up his ability to claim the debt is unenforceable. That is because in most States a consumer's partial payment on a time-barred debt—or his promise to resume payments on such a debt—will restart the statute of limitations. FTC Report 47; see, e.g., <u>Young v. Sorenson</u>, 47 Cal. App. 3d 911, 914, 121 Cal. Rptr. 236, 237 (1975) ("The theory on which this is based is that the payment is an acknowledgement on the existence of the

indebtedness which raises an implied promise to continue the obligation and to pay the balance'"). Debt collectors' efforts to entrap consumers in this way are one of the industry's worst practices.

### *V.    Allegations*

29.    Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged canceled consumer debt from the Plaintiff.

30.    Nationstar Mortgage, the previous loan servicer, sent the Plaintiff, a charge-off, a cancellation of debt by way of a Form 1099-C on August 3, 2015. (See attached exhibit)

31.    The said August 3, 2015 1099-C from Nationstar Mortgage stated that the amount of the debt that was being discharged and canceled was $133,505.59.

32.    Nationstar Mortgage selected code "G" on the 1099-C which is the "Decision or policy to discontinue collection" The Form 1099-C cancelled the principal balance owed and expunged the debt.

33.    The Identifiable Event Code on the Form 1099-C marked "G"

34.    Code "G" on a Form 1099-C represents that the creditor has made a decision or policy to discontinue collection of the debt and cancel the debt.

35.    Subsequently, Nationstar Mortgage submitted a tax Form 1099-C to the Internal Revenue Service (IRS) for the cancellation of the debt amount owed to Nationstar Mortgage.

36.    The 1099-C expunged the debt obligation in effect, forever canceling the debt and its interest. As a result, Plaintiff was obligated to pay taxes on the cancelled

debt.

37.     A debt that becomes canceled due to a 1099-C "Cancellation of Debt" becomes unenforceable and loses its legal attachment to the real estate.

38.     The expungement of a cancelled debt completely invalidated the debt and rendered the debt legally unenforceable thereby severing the debts legal attachment to any real estate.

39.     The FDCPA does not permit a debt collector to seek any repayment of the canceled debt.

40.     On or about April 7, 2017, Defendant FCI Lender Services, Inc. sent a collection letter to the Plaintiff Eliyo Chkechkov. (See attached exhibit)

41.     The said April 7, 2017 letter faild to inform plaintff that the said debt was cancelled and forgiven.

42.      The said April 7, 2017 letter misrepresnted the principal balance as $133,505.59 when in fact the debt had been canceled and plaintiff already incurred a tax obligation on the cancelled amount of $133,505.59.

43.     The said April 7th letter also illegally sought to charge plaintiff "Accrued Interest" of $58,547.76.

44.     The previous creditor and owner, Nationstar Mortgage, forgave the entire accelerated debt obligation.

45.     When the entire debt was canceled, the debt and option to collect interest was cancelled.

46.     Despite the fact that Nationstar had specifically stated that the debt had been waived and forgiven, Defendant nevertheless engaged in the collection of an

illegal invalid debt.

47.     Nationstar's charged-off and canceled the debt and forever ceased the collection on the debt.

48.     Nationstar took advantage of the IRS rules allowing tax deductions for "bad debts"(www.irs.gov/publications/p535/ch10.html).

49.     This action by Nationstar, in turn, rendered it inequitable to allow it or another third party to belatedly enforce the extinguished debt after it received the "canceled debt" tax benefit of the "charge-off."

50.     Defendant's attempts to collect the canceled debt after the debt was waived violated the Fair Debt Collection Practices Act ("FDCPA").

51.     Defendant violated the FDCPA when it attempted to collect and invalid debt that was already waived.

52.     Nationstar stated to the plaintiff that it intended to waive the debt and forever extinguish plaintiff's debt obligation.

53.     Nationstar took the decisive and unequivocal action to forgo the debt for strategic business reasons among other reasons.

54.     This practice also permitted the creditor, and the servicers to remove the account from the financial records and receive a bad debt tax deduction. See I.R.C. § 166(a)(2).

55.     This trade-off leads to the reasonable understanding that the creditor intended to waive the debt.

56.     In addition, Nationstar's explicitly stated that it was cancelling the debt and ceasing all collection of the canceled debt.

57.     Nationstar knowingly and intentionally canceled the debt and expunged plaintiff's debt obligation, in order to take advantage of favorable accounting practices.

58.     Because Nationstar canceled the debt defendant FCI could not create a debt out of thin air. Defendant FCI could not collect on an account that had had been canceled.

59.     Defendant is in violation of the FDCPA for trying to create a monetary obligation out of thin air.

60.     Defendant FCI unlawfully sought to collect on a debt that was extinguished by Nationstar the original creditor.

61.     FCI's collection of an invalid debt was both deceptive under §1692e and unfair in violation of § 1692f.

62.     Defendant FCI misrepresented the legal status of the canceled debt and misrepresented the amount of debt, in violation of § 1692e.

63.     Defendant FCI attempted the collection of an invalid amount which was not expressly authorized by the agreement creating the debt, nor was it permitted by law." 15 U.S.C. §1692f(1)

64.     Nationstar took voluntary actions demonstrating an intention to waive the debt. See. *Bunce v. Portfolio Recovery Assocs., LLC*, 2014 U.S. Dist. LEXIS 159679 (D. Kan. Nov. 12, 2014) (Recognizing that in cases where the creditors took voluntary actions demonstrating an intention to waive the debt collection of such amounts after waiver would violate the FDCPA)

65.     Defendant FCI had no right to claim that interest was accruing and would continue to accumulate on the expunged debt.

66.     By falsely adding interest to the canceled debt, Defendant made materially false statements, in violation of 15 U.S.C. § 1692e of the FDCPA.

67.     In Addition to the fact that Nationstar canceled the debt the law of New York has long held that a waiver is the voluntary relinquishment of a right. *Cowenhoven v. Ball,* 118 N.Y. 231 (N.Y. 1890)

68.     Waiver can be express or implied. An express waiver will be written or oral. An implied waiver is more difficult to prove. An implied waiver may be done "by acts from which an intention to waive may be inferred or from which a waiver follows as a legal result." *Titus v. Glens Falls Ins. Co.*, 81 N.Y. 410 (N.Y. 1880).

69.     Black's Law Dictionary (9th ed) defines implied waiver as a "…waiver of contractual rights…where the conduct or acts of the party charged with waiver have either: (1) clearly manifested an intention to waive the contract provision or term allegedly waived or (2) reasonably induced the non-waiving party to rely upon an apparent waiver or such term or provision".

70.     Defendant FCI, continued to pursue the canceled charged-off debt.

71.     Defendant FCI violated sections §1692e and §1692f of the FDCPA for falsely representing the amount of the charged-off debt, using unfair and unconscionable means to collect the debt, and for threatening to take action which cannot legally be taken.

72.     Defendant, by collecting a canceled debt where it had neither a contractual, nor a statutory, right to do so, used unfair or unconscionable means to collect a debt, in violation of § 1692f of the FDCPA.

73.     Defendant's violations of § 1692f of the FDCPA render it liable for

statutory damages, costs, and reasonable attorneys' fees.  See, 15 U.S.C. §1692k.

74.    Defendant attempted to collect an invalid debt and illegal interest on a canceled debt when it was not entitled to do so.

75.    Defendant's conduct was deceptive and misleading in violation of 15 U.S.C. § 1692e.

76.    Defendant's conduct was also unfair and unconscionable in violation of 15 U.S.C. § 1692f.

77.    Defendant violated 15 U.S.C. §§ 1692e(2)(A) and 1692e(10) for collecting on a expunged debt.

78.    Upon information and belief, the said April 7, 2017 letter from Defendant FCI was the Defendant's initial communication with the Plaintiff.

79.    The letter stated in part: "As of the date of this Notice, the Debt is $193.586.36. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection."

80.    15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

81.    In addition to the fact that this debt was invalid one such requirement is that the debt collector provides "the amount of the debt." 15 U.S.C. § 1692g(a)(1).

82.     A debt collector has the obligation not just to convey the amount of the debt, but to convey such clearly.

83.     15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

84.     The question of whether a collection letter is deceptive is determined from the perspective of the "least sophisticated consumer."

85.     While § 1692e specifically prohibits certain practices, the list is non-exhaustive, and does not preclude a claim of falsity or deception based on any non-enumerated practice.

86.     In addition to the fact that this letter is deceptive on its face since FCI is attempting to collect a fictitious illegal debt. A collection letter is additionally deceptive under 15 U.S.C. § 1692e if it can reasonably be read by the least sophisticated consumer to have two or more meanings, one of which is inaccurate.

87.     A collection letter is also deceptive under 15 U.S.C. § 1692e if it is reasonably susceptible to an inaccurate reading by the least sophisticated consumer.

88.     The letter fails to inform Plaintiff that the debt has been canceled and it also fails to inform the plaintiff whether the amount listed is the actual amount of the debt due.

89.     A debt obligation that gets expunged also expunges the debts ability to accrue interest therefore this letter is in violation of the FDCPA.

90.     The Defendant's failures are purposeful. Defendant's conduct constitutes a false, deceptive, and misleading means and representation in connection with the

collection of the debt, in violation of 15 U.S.C. § 1692e.

91.     The letter can reasonably be read by the least sophisticated consumer to have two or more meanings concerning the actual balance due, one of which must is inaccurate, in violation of 15 U.S.C. § 1692e.

92.     Defendant's conduct violates 15 U.S.C. §§ 1692g(a)(1) and 1692e.

93.     In the first paragraph of the said letter, the Defendant stated: "The servicing of your Promissory Note is being transferred, effective 04/03/2017.   This means that after this date, a new Servicer will be collecting your Promissory Note payments from you. **Nothing else about your Promissory Note will change**." (emphasis added)

94.     However, on the last page of the letter titled "BORROWER WELCOME LETTER" was stated: "**PLEASE BE ADVISED YOUR LOAN TERMS MAY BE ADJUSTED ONCE ALL LOAN DOCUMENTS HAVE BEEN RECEIVED AND/OR REVIEWED.**"

95.     The debt has been expunged and canceled therefore the said statements are entirely deceptive and contradictory and render the Defendant's Validation Notice defective.

96.     Such language results in the consumer to be unable to deduce as to what the exact terms of the loan agreement are.

97.     The letter was devoid of a disclosure that the debt has been canceled, forgiven and expunged.

98.     The said two statements are deceptive and unfair as the expungement and cancelation of the debt cannot be adjusted or changed subsequent to the loan

documents having been reviewed.

99.    The least sophisticated consumer who reads such conflicting statements would believe that the loan terms could in fact be adjusted.

100.    At no time upon the debt collector receiving the account from the creditor, can the cancelation be adjusted.

101.    Said language can be reasonably read to have two or more different meanings, one of which is false.[1]

102.    In addition, The Margolin and Weinreb Law Group, LLP, and West Coast Servicing, Inc. have respectively been communicating with the Plaintiff, each in an illegal attempt to collect on the extinguished loan.

103.    On September 12th 2017 West Coast Servicing, Inc. sent plaintiff a letter seeking to collect on the same debt on that same day FCI sent plaintiff a letter seeking to collect on the same illegal debt.

104.    The Margolin and Weinreb Law Group, LLP also illegally sent plaintiff a letter in September seeking to collect on the same invalid debt.

105.    FCI, West Coast Servicing, Inc. and The Margolin and Weinreb Law Group, LLP were all simultaneously trying to collect on this fictitious debt.

106.    Both West Coast Servicing, Inc. and Margolin and Weinreb have communicated to the Plaintiff that he owns multiple illegal debts.

---

[1] *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25 (2d Cir. 1989) (Because the collection notice was reasonably susceptible to an inaccurate reading, it was deceptive within the meaning of the Act.); *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) (Collection notices are deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. N.Y. 1996) (A collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate. The fact that the notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10) of the Act.)

107.    Even though this debt became barred from collection due to the debts cancelation West Coast Servicing, Inc. told plaintiff that they will sue on this fictitious debt.

108.    West Coast Servicing and Margolin and Weinreb have illegally threatened foreclosure proceedings against the Plaintiff and each company was deceptively claiming the exclusive right to collect on the invalid debt.

109.    FCI, West Coast Servicing and Margolin and Weinreb created, out of thin air, three separate debts when in fact, the debt was canceled and expunged.

110.    FCI had created a new fictitious debt in violation of the FDCPA.

111.    The least sophisticated consumer is left to worry about being defrauded or paying on a debt that was forgiven and paid taxes.

112.    Such actions were both deceptive under §1692e and unfair in violation of § 1692f.

113.    After the filling of the initial complaint in this case FCI, West Coast Servicing, Inc. and The Margolin and Weinreb Law Group, LLP have agreed to forever cease collection of this invalid canceled debt.

114.    In addition, on February 28th 2018 Defendant Margolin & Weinreb emaild plaintiffs councel stating that "I confirm that we are not going to continue to collect upon the debt." and "My client is not going to continue to collect upon the debt".

115.    On March 13, 2018 in violation of the email agreement FCI Lender Services, Inc. sent plaintiff another letter seeking to collect on the same expunged illegal debt. (See attached exhibit)

116.    Despite the agreement that everyone would cease collecting on this debt

FCI Lender Services, Inc. again tried to collect on this fictitious debt.

117.   Even though this debt became barred from collection due to the debts cancelation FCI Lender Services, Inc. told plaintiff that they will sue on this fictitious debt.

118.   On March 20th, 2018 FCI Lender Services, Inc. told plaintiff that this debt is valid and being collected despite the fact that FCI and Margolin & Weinreb agreed in writing to cease collecting on the debt.

119.   The least sophisticated consumer is left to worry about being defrauded or paying on a debt that was forgiven and paid taxes on.

120.   Such actions were both deceptive under §1692e and unfair in violation of § 1692f.

121.   At the onset of this lawsuit, and by this lawsuit, FCI was made aware that Plaintiff is represented by counsel regarding this invalid debt.

122.   There can be no dispute that FCI knew that an attorney was representing the Plaintiff for this invalid debt.

123.   There is no dispute that FCI directly sent Plaintiff multiple collection letters after receiving actual knowledge that plaintiff was represented by counsel.

124.   The parties agree that FCI directly sent Plaintiff a debt collection letter after knowing that the Plaintiff was being represented by counsel. Based on the evidence, no rational trier of fact could reasonably find that FCI received insufficient information to be put on notice that Plaintiff was represented by counsel.

125.   Consequently, FCI had actual knowledge Plaintiff was represented by counsel and is liable for contacting him directly in addition to the fact that one of those

contacts violated the agreement between the parties and further violated the FDCPA.

126. After the case being filed against the Defendant, the Defendant attempted to contact the Plaintiff directly although aware that the Plaintiff was represented by counsel.

127. The Defendant is in violation of the FDCPA, since the debt collector knew that the consumer was represented by an attorney with regard to the subject debt and had knowledge of the attorney's name and address.

128. Section 1692b of the FDCPA provides:

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall –

(6) After the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to the communication from the debt collector.

129. § 1692c, of the FDCPA further states "a debt collector may not communicate with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney." 15 U.S.C. § 1692c(a)(2). Once the debt collector receives notice of representation, "the debt collector shall not communicate further with the consumer with respect to such debt "unless it is to advise the consumer that its collection efforts are being terminated or that it intends to invoke specified remedies. Id. § 1692c(c).

130. Defendant's conduct aggravated and harassed the Plaintiff.

131. Upon information and belief, Defendant has repeatedly engaged in similar harassing conduct.

132.   The Defendant knew or should have known that its actions violated the FDCPA.

133.   Defendant violated 15 U.S.C. §§ 1692b(6) and 1692c(a)(2) of the FDCPA for communicating with the Plaintiff, though the Defendant had the knowledge that Plaintiff was represented by an attorney.

134.   Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

135.   Plaintiff suffered actual harm by being the target of Defendant's misleading debt collection communications.

136.   The Plaintiff alleges and avers that Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

137.   The Plaintiff alleges and avers that Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

138.   The Plaintiff alleges and avers that Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

139.   The Plaintiff alleges and avers that Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to the Defendant's collection efforts.

140.   The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose

intelligently. The Plaintiff alleges and avers that Defendant's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

141.   These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

142.   Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment. Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including, declaratory relief, and damages.

## VI.   Class Allegations

143.   This action is brought as a class action. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

144.   The identities of all class members are readily ascertainable from the records of FCI Lender Services, Inc. and those business and governmental entities on whose behalf it attempts to collect debts.

145.   Excluded from the Plaintiff's Class is the Defendant and all officers, members, partners, managers, directors, and employees of FCI Lender Services, Inc., and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

146.   There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class

members. The principal issues are whether the Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the FDCPA.

147.    The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

148.    The Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause them not to vigorously pursue this action.

149.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)    **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

(b)    **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The principal issues are whether the Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the FDCPA.

(c)    **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Class defined in this complaint

have claims arising out of the Defendant's common uniform course of conduct complained of herein.

(d)      **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

(e)      **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendant who, on information and belief, collects debts throughout the United States of America.

150.   Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate provisions of the FDCPA, and is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

151. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

152. Further, Defendant has acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

153. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## VII.    Cause of Action

154. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

155. This cause of action is brought on behalf of Plaintiff and the members of a class of whom Defendant's records reflect resided in the State of New York:

    a) who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff, within one year prior to the date of the within complaint up to and including the date of the filing of this complaint;

    b) the collection letter was sent to a consumer seeking payment of a personal debt;

    c) the collection letter was not returned by the postal service as undelivered;

d) the Plaintiff alleges and avers that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10) and 1692f.

156.    This cause of action is brought on behalf of Plaintiff and the members of an additional class of whom Defendant's records reflect resided in the State of New York:

a) who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff, within one year prior to the date of the within complaint up to and including the date of the filing of this complaint;

b) the collection letter was sent to a consumer seeking payment of a personal debt;

c) the collection letter was not returned by the postal service as undelivered;

d) the Plaintiff alleges and avers that the letter contained violations of 15 U.S.C. §§ 1692e and 1692g(a)(1)of the FDCPA for the use of any false representation or deceptive means to collect or attempt to collect any debt, for misrepresenting the amount of the debt owed by the Plaintiff and for failing to accurately state the amount of the debt in the initial communication.


157.    This cause of action is brought on behalf of Plaintiff and the members of an additional class of whom Defendant's records reflect resided in the State of New York:

a) who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff, within one year prior to the date of the within complaint up to and including the date of the filing of this complaint;

b) the collection letter was sent to a consumer seeking payment of a personal debt;

c) the collection letter was not returned by the postal service as undelivered; the Plaintiff alleges and avers that the letter contained violations of 15 U.S.C. §§ 1692b(6) and 1692c(a)(2) of the FDCPA for communicating with the Plaintiff though the Defendant had the knowledge that Plaintiff was represented by an attorney.

### VIII.    Violations of the Fair Debt Collection Practices Act

158.   The Defendant's actions as set forth above in the within complaint violates the FDCPA.

159.   Because the Defendant violated the FDCPA, the Plaintiff and the members of the class are entitled to damages in accordance with the FDCPA.

160.   As a direct and proximate result of these violations of the above FDCPA violations, Plaintiff and class members have suffered harm and are entitled to preliminary and permanent injunctive relief, and to recover statutory damages, costs and attorney's fees.

### IX.    Jury Demand

161.   Plaintiff demands a trial by jury.

## X.    Prayer for Relief

162.    Plaintiff demands the following relief:

WHEREFORE, the Court should enter Judgment in favor of Plaintiff and against Defendant for:

1)    Statutory damages under the FDCPA, 15 U.S.C. § 1692(k);

2)    Attorney fees, litigation expenses and costs of suit;

3)    An order enjoining and directing Defendant to comply with the FDCPA in its debt collection activities; and

4)    Such other and further relief as the Court deems proper.

Dated: Brooklyn, New York
March 23, 2018


/s/ David Palace
**Law Offices of David Palace** (DP 3855)
383 Kingston Ave. #113
Brooklyn, New York 11213
Telephone: 347-651-1077
Facsimile: 347-464-0012

| CREDITOR'S name, street address, city or town, state or province, country, ZIP, or foreign postal code, and telephone no. | 1 Date of identifiable event | OMB No. 1545-1424 | **Cancellation** |
|---|---|---|---|
| NATIONSTAR MORTGAGE LLC<br>RETURN SERVICE ONLY<br>P.O. BOX 619063<br>DALLAS, TX  75261-9063<br><br>CUSTOMER SERVICE: 1-888-480-2432 | 08/03/2015 | **2015** | **of Debt** |
| | 2 Amount of debt discharged | | |
| | $  133,505.59 | Form **1099-C** | |
| | 3 Interest if included in box 2 | | |
| | $  0.00 | | |

☐ CORRECTED (if checked)

| DEBTOR'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code | 4 Debt description | | **Copy B** |
|---|---|---|---|
| | MORTGAGE LOAN | | **For Debtor** |
| 9-692-46315-0040338-007-1-000-000-000-000<br><br>ELIYO CHKECHKOV<br><br>**Redacted** | | | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| | 5 If checked, the debtor was personally liable for repayment of the debt . . . . . . . ▶ ☒ | | |
| | 6 Identifiable event code | 7 Fair market value of property | |
| | G | $ **Redacted** | |
| | CREDITOR'S federal identification number | DEBTOR'S identification number | |
| | **Redacted** | **Redacted** | |
| | Account number (see instructions) | | |
| | **Redacted** | | |

Form **1099-C**       (Keep for your records)       www.irs.gov/form1099c       Department of the Treasury - Internal Revenue Service

04/07/2017

**FCI Lender Services, Inc.**

*Loan Servicing  •  Specialty Servicing  •  Default*

Phone: 800-931-2424    Fax: 714-282-5775

## NOTICE OF SERVICING TRANSFER

ELIYO CHKECHKOV

**Redacted**

Loan #: **Redacted** 776

Property: **Redacted**

Dear ELIYO CHKECHKOV:

The servicing of your Promissory Note is being transferred, effective 04/03/2017. This means that after this date, a new Servicer will be collecting your Promissory Note payments from you. Nothing else about your Promissory Note will change.

West Coast Servicing, Inc. is now collecting your payments. West Coast Servicing, Inc. will stop accepting payments received from you on 04/03/2017. FCI Lender Services, Inc. will collect your payments going forward. FCI Lender Services, Inc. will start accepting payments received from you on 04/03/2017.

**Send all payments due on or after 04/03/2017 to FCI Lender Services Inc. at this address: PO BOX 27370, Anaheim, CA 92809-0112.**

If you have any questions for either your present servicer, West Coast Servicing, Inc., or your new Servicer FCI Lender Services, Inc. about your Promissory Note or this transfer, please contact them using the information below:

| Previous Servicer | Current Servicer: |
|---|---|
| West Coast Servicing, Inc. | FCI Lender Services, Inc. |
| Customer Service | Customer Care Department |
| 18831 Von Karman Ave, Ste 380 | Post Office Box 27370 |
| IRVINE, CA, 92612 | Anaheim Hills, California 92809-0112 |
| 866-572-7786 (toll free or collect) | (800) 931-2424, x651 (toll free) |
| Hours of Operation: | Hours of Operation |
| Monday - Friday | Monday – Friday |
| 08:30 AM - 05:00 PM (Pacific Standard Time) | 08:00 AM – 05:00 PM (Pacific) |

Important Note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may not affect your insurance because we have not serviced mortgage life or disability premiums. However, if you wish to retain optional insurance, we would suggest that you contact your current optional product service provider or your Lender.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer on or before its due date may not be treated by the new Servicer as late, and a late fee may not be imposed on you.

Sincerely,
Customer Care Department
FCI Lender Services

04/07/2017

FCI Lender Services, Inc.

*Loan Servicing* • *Specialty Servicing* • *Default*

Phone: 800-931-2424   Fax: 714-282-5775

## BORROWER WELCOME LETTER

ELIYO CHKECHKOV

**Redacted**

Re Loan Number: Redacted 776

Property: Redacted   Redacted   Redacted   Redacted

Dear ELIYO CHKECHKOV:

**Welcome to FCI Lender Services, Inc. ("FCI") Loan servicing!** FCI is your Servicing Agent and is servicing your Promissory Note on behalf of your Lender/Creditor, **West Coast Servicing, Inc.** (The "Creditor"). FCI is also a Debt Collector. Your Creditor has authorized FCI to process and collect your scheduled Promissory Note payments according to your Promissory Note and Security Instrument. A *Payment Statement* will be mailed or emailed to you on a regular basis. Please send your check with your account number written on it, plus the payment coupon from your statement (unless you have established an Automated Payments (ACH) debit program with FCI). You should review each *Payment Statement* carefully for accurate loan information. At year-end, an interest statement (IRS Form 1098) will be mailed to you for tax purposes. To view your account, and for other payment options, visit www.trustfci.com and click on "Borrower Payment Options" located at the top of FCI's web page.

### IMPORTANT BANKRUPTCY INFORMATION

**IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.**

Your Creditor has provided FCI the following information regarding the Total Amount Due on your Promissory Note (the "Debt").

| | | | |
|---|---|---|---|
| Deferred Principal Balance: | $ 0.00 | Principal Balance: | $ 133,505.59 |
| Deferred Unpaid Interest: | $ 0.00 | Accrued Interest: | $ 58,547.76 |
| Deferred Late Charges: | $ 0.00 | Accrued Late Charges: | $ 1,533.01 |
| Deferred Loan Charges: | $ 0.00 | Other Amounts Due: | $ 0.00 |
| | **Total Debt:** | **$ 193,586.36** | |

**VALIDATION OF DEBT:** Unless you, the consumer, within thirty days after receipt of this notice, dispute the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by FCI as the Debt Collector. If you notify FCI in writing, within thirty days after receipt of this notice, that you dispute the Debt or any portion of the Debt, we will, as required by law, obtain and mail to you verification of the Debt and/or a copy of a Judgment against you. Upon your written request within the thirty-day period, FCI as the Debt Collector will provide you, as the consumer, with the name and address of the original creditor, if different from the current Creditor.

As of the date of this Notice, the Debt is **$ 193,586.36**. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

**PLEASE BE ADVISED YOUR LOAN TERMS MAY BE ADJUSTED ONCE ALL LOAN DOCUMENTS HAVE BEEN RECEIVED AND/OR REVIEWED.**

**IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

If you have any questions regarding the above information, please write or call FCI's Customer Care Center toll-free number at 1-800-931-2424 (x651) during normal business hours (Monday-Friday, 8:00 AM – 5:00 PM, PST). When calling, please reference your loan number.

Sincerely,
Customer Care Department
FCI Lender Services

PO BOX 27370
Anaheim, CA 92809-0112

**IMPORTANT INFORMATION
ENCLOSED**



(11) 969 0024 8673 6032 3

Mailed On:          3/13/2018
Mailing Number:     [Redacted]-01          ClientID [Redacted] 68  FC
                                                                        **B**

ELIYO CHKECHKOV
[Redacted]

**CUSTOMER SERVICE**

Our Customer Care Department is here to help if you have any questions. Please call us toll-free during regular business hours (Mon-Fri, 8:00 am - 5:00 pm PST) at 1-800-931-2424, x651.

**ERROR RESOLUTION AND REQUEST FOR INFORMATION**

If you believe that there is an error in your account or if you need FCI to provide you with any documentation or information regarding your mortgage loan account, please write to FCI at the following address: FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 27370, Anaheim, CA 92809-0112; or fax to FCI at 1-714-282-5775. You will need to provide us the name of the Borrower(s), the mortgage loan account number and either describe the error that you believe has occurred or the request for specific information or documentation. We do not accept any requests for either Error Resolution or for documentation and/information over the telephone although you can call us if you have any questions about the Error Resolution and/or Request for Information process.

**CONFORMING PAYMENTS - PAYOR REQUIREMENTS**

The payment coupon must be included with remittance. Payments are to be received in accordance with the periodic payment statement and must include your account number clearly illustrated on the payment instrument. All payments must be received by FCI during normal business hours (Mon-Fri, 8:00 am to 5:00 pm PST) in order to be credited to Payer's account the same day of receipt. All payments must be payable in U.S. Dollars only and mailed directly to FCI's payment processing P.O. Box set forth in FCI's Periodic Statement and payment coupon. **PARTIAL PAYMENTS** are held in suspense accounts until a full payment is received. At that point, the full payment will be applied to the principal and interest of the first monthly payment to become delinquent or as otherwise referenced in your Note and Security Instrument.

**NOTE ACCELERATION DISCLOSURE**

If your loan is in foreclosure or has been accelerated, the accrual of late charges may be waived from the acceleration date in accordance with state and federal regulations. They are listed on the statement for reinstatement and informational purposes only.

**SERVICEMEMBERS CIVIL RELIEF ACT**

The Service members Civil Relief Act may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty or you are the spouse or dependent of a person who has been called to active duty, and you have not yet made us aware of your status, please contact our Customer Care Department during normal business hours (Mon-Fri, 8:00 am to 5:00 pm PST) at 1-800-931-2424, x651.

**MORTGAGE COUNSELING**

For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp or the Department of Housing and Urban Development at : http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm , or by calling HUD at 1-800-569-4287.

**NEW YORK CONSUMERS ONLY**

FCI is registered with the Superintendent of the New York State Department of Financial Services (NMLS #4920). Our goal is to provide professional and courteous service to our customers. We welcome your comments and feedback regarding our services. If you have a complaint regarding our services, we ask you to contact us to discuss your concerns. If the need arises, you may file complaints about FCI with the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-877-BANK-NYS or by visiting the Department's website at www.dfs.ny.gov.

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

--------Please detach the bottom portion of this Statement, return it with your payment, and retain the top portion for your records ----------

**CHANGE OF ADDRESS** *(If correct on front, please do not use)* For change of address over the phone, call our Customer Care Department at 1-800-931-2424, x651. Please Print Clearly in blue or black ink only in the boxes below:

Street Address _____

City_____ State_____ ZipCode _____

Area Code and Home Phone_____ Area Code and Work Phone_____

Email_____

| Property Use? | Market Value of Property? | Email Payment Statements? |
|---|---|---|
| __Primary Residence | | ____Yes, I'd like to receive email statements. |
| __Rental | $_____ | ____ No, please don't send me email statements. |
| __Commercial | | |



# FCI Lender Services, Inc.

**Customer Service: (800) 931-2424    Fax: 714-282-5775**

Customer Information: www.trustfci.com NMLS #4920, BRE #01022780

## Payment Statement

Statement Date: 03/12/2018

customerservice@trustfci.com

### Account Information

| | | | |
|---|---|---|---|
| Outstanding Principal Balance: | $133,505.59 | Prepayment Penalty | NO |
| Deferred Amounts: | $0.00 | Loan Maturity Date : | 05/01/2019 |
| Current Interest Rate: | 6.250% | Payment Type : | Fully Amort./ Fixed Rate |
| Next Interest Rate Change Date: | - | | |
| Remaining Loan Term (Months): | 13 | Next Due Date : | 05/01/2010 |

| | |
|---|---|
| Account Number : | **Redacted** 76 |
| Payment Due Date : | 04/01/2018 |
| **AMOUNT DUE:** | **$90,399.86** |

If Payment is not received by 04/16/2018, $18.47 Late Fee will be charged

**ELIYO CHKECHKOV**

**Redacted**

MoneyGram: CODE 5090, (Call 800-555-3133 for locations and fees)

### Explanation of Payment Due

| | |
|---|---|
| Principal : | $373.87 |
| Interest | $549.71 |
| Other Amounts Due : | $0.00 |
| Escrow (Taxes and/or Insurance) | $0.00 |
| **Current Payment:** | **$923.58** |
| Total Fees and Charges | $1,736.18 |
| Overdue Payments : | $87,740.10 |
| **Total Amount Due:** | **$90,399.86** |

### Transaction Activity Since (01/12/2018 - 03/12/2018)  To view all transactions please log into www.trustfci.com

| Date | Description | Charges | Payments | Date | Description | Charges | Payments |
|---|---|---|---|---|---|---|---|
| 02/17/2018 | Assessed Late Charge | $18.47 | $0.00 | 01/17/2018 | Assessed Late Charge | $18.47 | $0.00 |

### Past Payments Breakdown

| | Paid Since Last Statement | Paid year to Date |
|---|---|---|
| Principal : | $0.00 | $0.00 |
| Interest : | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance) : | $0.00 | $0.00 |
| Fees : | $0.00 | $0.00 |
| *Partial Payment (Unapplied) : | $0.00 | $0.00 |
| Others : | $0.00 | $0.00 |
| **TOTAL :** | **$0.00** | **$0.00** |

**If You Are Experiencing Financial Difficulty:**
See back for info about Mortgage Counseling or assistance.

### Delinquency Notice

You are late on your mortgage payments. Failure to bring your loan current may results in fees and foreclosure - the loss of your home. As of 03/12/2018, you are 2,872 days delinquent on your mortgage loan.

**Recent Payment Account History:**

* Payment due 11/01/2017 - Unpaid balance of $85,726.55
* Payment due 12/01/2017 - Unpaid balance of $942.05
* Payment due 01/01/2018 - Unpaid balance of $942.05
* Payment due 02/01/2018 - Unpaid balance of $942.05
* Payment due 03/01/2018 - Unpaid balance of $923.58
* Current Payment Due 04/01/2018: $923.58

**Total : $90,399.86 due. You must pay this amount to keep your loan current.**

------PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT, RETURN IT WITH YOUR PAYMENT AND RETAIN THE TOP PORTION FOR YOUR RECORDS------

 FCI Payment Coupon
Please do not Staple or Paperclip

 Pay your bill online ($15.00 fee)
https://ilrs.trustfci.com/borrower

 Pay by Phone ($18.00 fee)
800-931-2424

**FCI Lender Services, Inc.**
PO BOX 27370
Anaheim, CA 92809-0112

### Amount Due

| | |
|---|---|
| Account | **Redacted** 76 |
| Current Payment Due By 04/01/2018 | $923.58 |
| Total Payment(s) Due | $90,399.86 |
| $18.47 Late Fee will be charged after 04/16/2018 | |
| Additional Principal : | |
| Additional Escrow: | |
| **Total Amount Enclosed:** | |

 Check box if your address or phone number has changed And complete the form on the back of this page.

Property Address: **Redacted**
**Redacted**

*031**LS-BPC* *9160012776* *04/01/18* 90399.86





# FCI Lender Services, Inc.

**Customer Service: (800) 931-2424   Fax: 714-28**

™ **Customer Information: www.trustfci.com NMLS #4920, 1**

## FORECLOSURE PREVENTION ALTERNATIVES

03/12/2018

ELIYO CHKECHKOV

Loan Account: **Redacted** 76

**Redacted**

Property: **Redacted**

Dear ELIYO CHKECHKOV,

You are receiving this letter in accordance with the Dodd-Frank Act. This Act was passed by Congress to help homeowners who may become delinquent on their home loans, possibly due to the housing crisis caused by Large Financial Institutions. The Act establishes guidelines for Servicers and Creditors (Lenders) who may be in a position to offer loan modifications, payment reductions, payment forgiveness, etc. to their delinquent borrowers.

The Act also provides exemptions for Servicers and small loan Creditors (Lenders) to decide to either offer or not offer any foreclosure prevention alternatives to their delinquent Borrowers. Your current Creditor on this loan is not a Large Financial Institution and has authorized FCI as their servicing agent to inform you of the following possible Loss Mitigation Alternatives:

**Your Creditor does not offer any Financial or Loss Mitigation Alternatives or other Programs at this time.**

There may be other options available to you such as reinstating your loan, or refinancing your property with another Lender. If you are not able to continue paying your mortgage, your best option may be to find more affordable housing or possibly sell your home and use the proceeds to pay off your current loan.

The most important thing is to take action now and call us today (800-931-2424 Ext 650). The longer that you wait, the harder it will be to find a solution. As of this date, your loan is 2872 days delinquent.

Your Account Representative is: Mario Gallegos
FCI's Toll Free Number is: 800-931-2424 Ext 650
FCI's Website for "Borrower Options": www.trustfci.com
FCI's Customer Care Dept - mailing address: PO BOX 27370, Anaheim, CA 92809-0112

For help exploring options, the United States Department of Housing and Urban Development (HUD) that offers financial advice to Borrowers having difficulty paying their Mortgage Loans. A HUD certified Counseling Center near you can be located by calling toll-free: 1-800-569-4287 or TTY/TTD 1-800-877-8339. You may also find useful information about foreclosure alternatives on the HUD website, including "Tips for Avoiding Foreclosure" at HTTP://www.hud.gov/foreclosure/

**If you or your account are subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge on this debt, this statement is for informational purposes only and is not an attempt to collect a debt. If you are not in bankruptcy or discharged of this debt, be advised that FCI is a debt collector and is attempting to collect a debt. Any information obtained will be used for that purpose.**

We look forward to hearing from you.
Sincerely,
FCI Lender Services, Inc.



EXHIBIT C

**LAW OFFICES OF DAVID PALACE**
383 KINGSTON AVE. #113
BROOKLYN, NY 11213
TEL: (347) 651-1077
FAX: (347) 464-0012
EMAIL: DAVIDPALACE@GMAIL.COM

March 23, 2018

<u>VIA ELECTRONIC FILING</u>

Hon. Roanne L. Mann
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    <u>*Chkechkov v. FCI Lender Services Inc*</u>
              Docket No: 1:17-cv-06195-FB-RLM

Dear Judge Mann,

    I represent Plaintiff in the above-referenced matter. I write this letter in response to defendant's letter. At the initial -in person settlement- conference discussions were held, and the case could not settle, the court discussed the apparent reality that the issuance of a 1099-C cancels the debt which would expunge the debt entirely. Plaintiff was ordered to produce the 1099-C evidencing cancelation of the debt and to file an Amended Class Action Complaint.

    In this case even though plaintiff incurred a tax liability for the forgiveness of his debt the Defendant still attempted to collect on this canceled debt. The Defendant is desperate to settle this case due to its egregious behavior. Plaintiff has held off twice on filling his amended complaint all the while attempting to settle this case however the defendant was taking its time hoping that at the last minute it would stonewall the plaintiff in to settling instead of him filling his amended complaint. As can be seen from defendant's letter the defendant is frantic that plaintiff will file his amended complaint however plaintiff will not be intimidated in to a last-minute settlement.

    The nature of theses settlement discussions is confidential and Subject to FRE 408 and as such defendant should not have breached that confidentiality. Defendant FCI is a debt collector who is subject to the FDCPA. Defendants Counsel the Margolin & Weinreb Law Group, LLP is also a debt collector and they were also collecting on this canceled and invalid debt, they are also subject to the FDCPA. Plaintiff instructed his counsel to inform defendant's counsel that as a prerequisite to settlement discussions defendant would need to advise in writing that Margolin & Weinreb and FCI will stop collecting on this invalid debt as it has been completely canceled and plaintiff already incurred an income tax liability for the forgiveness of this debt.

Defendant recognized that this debt was invalid and that any further collection of this illegal debt would warrant further lawsuits additionally they understood that plaintiff would not discuss settlement unless they agree in writing to forever cease from collecting on this expunged debt.

Plaintiff made his original settlement demand on March 6, 2018, and on March 13, 2018 I wrote to Defendant's counsel that I had not heard back from him in response to the demand. Defendant did not want plaintiff to file his amended complaint, but surprisingly they had not responded to plaintiff's settlement demand.

Finally, On March 14, Defendants Attorney Alan Smikun relayed his clients offer to settle. That same day plaintiffs' counsel had advised Defendants counsel of the counter offer to settle. To date, Defendants counsel has not responded to my proposal and instead filed his frivolous letter as a means to intimidate me and my client into a settlement they would prefer. Although plaintiff's counsel was instructed by plaintiff not engage in settlement discussions prior to an agreement in writing stating that the defendants and defendants counsel would forever cease collection on this canceled debt, **at no point did plaintiff's counsel ever withhold written communication from Defendants counsel.** It is precisely due to situations as the present one that Plaintiff's counsel mandates that settlement discussions be done in writing.

On February 28, 2018 Defendants counsel Alan Smikun communicated with plaintiff's counsel and advised that they would not be continuing to collect on this debt. Plaintiff's counsel further requested assurances in writing that his client would also not be collecting on this invalid debt and defendants counsel specifically assured plaintiff's counsel that he was acting on behalf of his client as well and that they would forever cease collecting on this invalid debt.

Despite the agreement in writing by Defendant's Counsel regarding Defendants cessation of collection on this invalid debt Plaintiff received a collection letter from Defendant FCI Lender Services, Inc. seeking to collect on this canceled and forgiven debt. Defendant mailed a collection letter to Plaintiff on March 13, 2018. Plaintiff was outraged, and he called FCI to ask if this was an error and he and was informed that they were still seeking collection on the debt and that the debt is valid.

Despite all these assurances, my client received a collection letter from FCI demanding payment on this debt. The letter from FCI was dated March 13, 2018. This communication was a violation of our agreement and multiple provisions of the FDCPA. Defendants would like to couch its violative behavior as a mere insignificant error, however, the FDCPA is a strict liability statute and the collection of an invalid debt violates multiple provisions of the FDCPA in addition to the fact that defendants violated the FDCPA by contacting a consumer they knew to be represented by counsel. See[1] *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529 (6th Cir. 2014).

---

[1] *Lee v. Kucker & Bruh, LLP*, 2013 U.S. Dist. LEXIS 110363, 2013 WL 3982427 (S.D.N.Y. Aug. 2, 2013) ("Defendants argue that they are not liable for violating the FDCPA because they did not know that they were misrepresenting that Mr. Lee's account was delinquent. ([Footnote 1] Defendants rely on the decision in *Stonehart v. Rosenthal*, No. 01 Civ. 651, 2001 U.S. Dist. LEXIS 11566, 2001 WL 910771, at *6 (S.D.N.Y. Aug. 13, 2001) (holding that to "state a claim under § 1692e(2) of the FDCPA, [the plaintiff] must show that [the debt collector] knowingly misrepresented the amount of the debt"), and similar district court cases inside and outside this circuit. These cases, however, are at odds with binding Second Circuit precedent. See also *Goldman v. Cohen*, No. 01 Civ. 5952, 2004 U.S. Dist. LEXIS 25517, 2004 WL 2937793, at *10, n.11 (S.D.N.Y. Dec. 17, 2004), aff'd on other grounds, 445 F.3d 152 (2d Cir. 2006) (concluding that analysis in *Stonehart* contradicts the plain language of 1692k(c) and the law as stated by the Second Circuit). This argument is contrary to binding Second Circuit precedent. The Defendants here are strictly liable for their violation of § 1692e. This Court holds that the misrepresentation in the Three Day Notice, the

(The bona fide error defense was not available in this case where filing an invalid lien could easily have been avoided and there were no procedures in place for immediately correcting the error. Although the collection agency alleged that the invalid lien began as an unintentional bona fide error, it admitted that it learned of the consumer's motion to vacate the judgment on the same day it filed the judgment lien and nonetheless failed to release the lien for a month. In addition, the agency alleged nothing to show that it maintains a procedure to avoid such an error as took place.) *Kelemen v. Professional Collection Sys.*, 2011 WL 31396 (M.D. Fla. Jan. 4, 2011). (The court denied summary judgment to the defendant on its bona fide error defense with respect to the claim that it violated § 1692e(2)(A) by collecting an invalid debt. While the defendant stated that it acted based upon its reliance on information provided by the referring creditor, the court found that the defendant failed to explain its policies and procedures adequately and that therefore a genuine issue of material fact existed as to whether the policies were reasonable.)

Plaintiff's amended complaint contains multiple violations of the FDCPA. For example a debt that becomes canceled due to a 1099-C "Cancellation of Debt" becomes unenforceable and loses its legal attachment to the real estate. The expungement of a canceled debt completely invalidated the debt and rendered the debt legally unenforceable thereby severing the debts legal attachment to any real estate. The FDCPA did not permit a debt collector to seek any repayment of the canceled debt. Defendants attempt to collect on an invalid debt violated the FDCPA these violations are in addition to the fact that FCI further violated the FDCPA and its agreement with plaintiff by sending another letter. This additional violation of the FDCPA only compounds the original egregious behavior of the Defendant.

Section 1692c, of the FDCPA further states "a debt collector may not communicate with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney." 15 U.S.C. § 1692c(a)(2). Once the debt collector receives notice of representation, "the debt collector shall not communicate further with the consumer with respect to such debt "unless it is to advise the consumer that its collection efforts are being terminated or that it intends to invoke specified remedies. Id. § 1692c(c).

At the onset of this lawsuit, and by this lawsuit, FCI was made aware that Plaintiff is represented by counsel regarding this invalid debt. There can be no dispute that FCI knew that plaintiff's counsel was representing Plaintiff for this invalid debt. There is no dispute that FCI directly sent Plaintiff a collection letter after receiving actual knowledge that plaintiff was represented by counsel. FCI directly sent Plaintiff a debt collection letter after knowing that plaintiff was being represented by counsel. Based on the evidence, no rational trier of fact could reasonably find that FCI received insufficient information to be put on notice that Plaintiff was represented by counsel. Consequently, FCI had actual knowledge Plaintiff was represented by counsel and is liable for contacting him directly in addition to the fact that said contact violated the agreement between the parties and further violated the FDCPA.

---

Verification and the Petition for summary nonpayment eviction of a debt supposedly owed by Mr. Lee for rent and fuel charges, when in fact he was current on his payments, is a violation of § 1692e(2)(A).")

Defendant's letter is for the most part incomprehensible it seems they are simply attempting to intimidate Plaintiff into not filing his amended complaint.

"[S]ection 1692f contains a non-exhaustive list of unfair practices, including the collection of an invalid debt."*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, No. 16-2165-cv, 2017 BL 407422 (2d Cir. Nov. 14, 2017)

Plaintiff does not intend to add additional parties to this action rather he intends to file separate lawsuits against other parties for their own individual abusive collection letters and unfair collection practices. In addition to the defendant, two different debt collectors engaged in deceptive practices against the Plaintiff in violation of the FDCPA. Each one of these distinct debt collection agencies conducted their own slew of deceptive collection activities against plaintiff. These collection agencies sent their own individual deceptive letters in violation of the FDCPA those letters are not the subject matter of this action, the plaintiff was open to discussing settlement with those other collectors however the defendant thinks they can somehow enjoin plaintiff from filling lawsuits against other collection agencies for those other agencies collection activities that are in violation of the FDCPA.

Regretfully defendant sent Plaintiff a Rule 11 letter, however Rule 11 imposes a duty on the party seeking sanctions to be circumspect in pursuing such a drastic remedy and to not to use the device for an improper purpose lest it may discourage expansion of the law through creative legal theories. See *Ario v. Underwriting Members of Syndicate 53* at Lloyds, 618 F.3d 277, 297 (3d Cir. 2010) (Rule 11 "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.") (citations omitted).

For this reason, "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. at 179 (S.D.N.Y. 2008); Advisory Committee Notes; see also *Koar v. United States*, 1997 U.S. Dist. LEXIS 15408, at *2 n.2 (S.D.N.Y. Sept. 2, 1997) ("[T]he making of a frivolous Rule 11 motion can itself result in sanctions against the movant."). The prevailing party may be entitled to reverse sanctions and costs where the Rule 11 motion "was clearly frivolous, filed for an improper purpose, or not well-grounded in fact or law." Id. (citing *Goldberg v. Blue Ridge Farms, Inc*., 2005 U.S. Dist. LEXIS 42907, at *7 (E.D.N.Y. July 26, 2005)).

According to the Advisory Committee Notes, an improper purpose would include any effort "to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable. See, *Sears, Roebuck & Co. v. Sears Realty Co*., 932 F. Supp. 392, 409, 1996 U.S. Dist. LEXIS 10651, 58-59 (N.D.N.Y 1996) ("Rule 11 can be a double-edged sword; a party who files such a motion is subject to the same requirements and sanctions in making a motion under that rule. Advisory Committee Note on 1993 Amendment. Furthermore, a Rule 11 motion should not be made "for minor, inconsequential violations . . . [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." Id. In this regard the court notes that plaintiff's understanding of Rule 11 is patently erroneous. Plaintiff both failed to comply with the rule's safe harbor provisions, as discussed above, and incorrectly represented the substantive legal requirements under Rule 11.")

Rule 11(c)(2) permits an award "to the prevailing party [of] the reasonable expenses, including attorneys' fees, incurred for the motion." "[I]n cases where the initial movant's Rule 11 motion is denied, a court may issue sanctions against the movant because 'the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.'" *Rothenhaus*, 252 F.R.D. at 179 (citations omitted).

The party opposing Rule 11 sanctions need not serve a cross-motion, or provide "safe harbor" notice, in order to request prevailing party fees under Rule 11(c). As the Advisory Committee notes, "[s]ervice of a cross-motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11 – whether the movant or the target of the motion – reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion." See also *Rothenhaus*, 252 F.R.D. at 179 ("The nonmoving party need not file a cross-motion to receive fees as the court can award reasonable expenses to the prevailing party[.]" (citing Advisory Committee Notes to Rule 11(c)(2))).

In determining whether Defendants are subject to a Rule 11(c) prevailing party fee award, their Sanctions Motion is not viewed under the same liberal standards applicable to the review of Plaintiffs' pleadings for Rule 11 compliance. As this Court observed in *Nakash v. U.S. Dep't of Justice*:

> **[A Rule 11] request is not protected by the lenient standards governing the review of target motions in a typical Rule 11 determination**. As noted above, those standards are designed to foster the creativity necessary for effective advocacy on the merits of the case. There is no reason to encourage creativity in formulating Rule 11 requests. If anything, **[Rule 11] litigation should be discouraged since it only detracts from "the just, speedy, and inexpensive determination of every act**. 708 Supp. 1354 (S.D.N.Y. 1988) (emphasis added).

In a tactic condemned by this Court as "all too familiar," Defendants attempt to "bolster" their blackmail "with an utterly frivolous and unwarranted letter for sanctions pursuant to Rule 11." *Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988).

As Judge Tenney similarly explained in Nakash:

> [C]ourts are best able to rule on requests for sanctions after deciding the underlying[merits]. . . . **Attorneys who choose to submit marginal requests for sanctions before that time**, in the misguided hope that they will persuade the court on the merits, **run a risk of violating that Rule [11]**.

708 F. Supp. at 1370 (Rule 11 motion filed to bolster a meritorious Rule 12(b)(6) argument was sanctionable) (emphasis added). The Advisory Committee's Notes caution that Rule 11 "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, . . . to intimidate an adversary into withdrawing contentions that are fairly debatable [or] to increase the costs of litigation. FED. R. CIV. P. 11 Advisory Committee's Notes (1993 Amendments).

Seeking to file a sanctions motion when the defendants are aware that plaintiffs position is based on sound law is especially egregious, since it deceptively tries to reframe the plaintiffs as well as the merits in bad light and it forces the Court to consider matters outside the pleadings, in violation of the Rule, while simultaneously attempting to defraud the court. See *Caribbean Wholesales and Serv. Corp. v. U.S. JVC Corp*., 101 F. Supp. 2d

236, 246 (S.D.N.Y. 2000) ("[A] Rule 11 motion must never been used as a mere tactic to bolster a response— whether meritorious or not—to a motion or a pleading[.]"); *Safe-Strap Co., Inc. v. Koala Corp*., 270 F. Supp. 2d 407 (S.D.N.Y. 2003) ("Rule 11 motions should not be employed to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." (citing Advisory Committee's Notes (ellipses omitted))).

Moreover, Plaintiff requests that the court caution defendant that any threat to pursue a motion for sanctions, which is quintessentially directed at the sufficiency of the legal merits, would be wasteful, deceitful and "especially detrimental to the parties and to judicial economy." *Rothenhaus*, 252 F.R.D. at 183; *On Time Aviation Inc. v. Bombardier Capital Inc*., 570 F. Supp. 2d 328, 332 (S.D.N.Y. 2008) ("To submit full briefing in . . . a [dispositive] motion and then submit the same grounds as supporting a Rule 11 motion is patently unreasonable." (awarding sanctions for Rule 11 filing) (emphasis added)). Most importantly in this case defendant was aware of the facts and the legal basis for all of plaintiffs' claims.

Plaintiff will be participating in mediation, however plaintiff has instructed his counsel to inform defendant that Plaintiff is not be open to any sort of settlement discussions until Plaintiff receives a release of the lien. Plaintiff has stated that he will inform the court (should the court order an in person settlement conference) and he will inform the mediator of same and that he will be proceeding with depositions and discovery. Additionally, to the extent defendant needs more time to obtain the release of the lien, they are welcome to request from plaintiff more time.

Respectfully Submitted,
LAW OFFICES OF DAVID PALACE
By:___s/David Palace_____
David Palace

cc:  Alan Smikun, Esq. (Via ECF)

EXHIBIT D

 Gmail

**David Palace <davidpalaceesq@gmail.com>**

## Fwd: 1:17-cv-06195-FB-RLM Chkechkov v. FCI Lender Services Inc

**Alan Smikun** <alansm@nyfclaw.com>                          Wed, Apr 11, 2018 at 5:37 PM
To: David Palace <davidpalaceesq@gmail.com>
Cc: Alan Weinreb <Alan@nyfclaw.com>

Good Afternoon,

I received today.   Sent for recording.

Will provide copy shortly, as well as, availability for mediator.

Best,

**ALAN SMIKUN, ESQ.**

**ASSOCIATE**

**THE MARGOLIN & WEINREB LAW GROUP, LLP**

*(formerly known as Pitnick & Margolin, LLP and The Law Offices of Alan Weinreb, P.C.)*
Your New York Foreclosure, Bankruptcy, Loss Mitigation, Eviction, REO and Real Estate Attorneys

165 Eileen Way, Suite 101

Syosset, NY 11791
(516) 921-3838, Ext. 321
F (516) 921-3824

www.nyfclaw.com

**WE ARE A DEBT COLLECTOR AND ARE ATTEMPTING TO COLLECT A DEBT.    ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

*** This e-mail message is subject to the Electronics Communications Privacy Act, 18 U.S.C. §§ 2510-2521, and the information contained in this e-mail is confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any review, re-transmission  dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is strictly prohibited. If you have received this communication in error, please immediately notify me and delete the original message without making any copies. ***
ANY TRANSMITTAL SENT TO A CLIENT OF THE SENDER OR THE FIRM SHALL BE DEEMED AS PROTECTED

**From:** David Palace [mailto:davidpalaceesq@gmail.com]
**Sent:** Wednesday, April 11, 2018 5:35 PM
**To:** Alan Smikun <alansm@nyfclaw.com>
**Subject:** Re: 1:17-cv-06195-FB-RLM Chkechkov v. FCI Lender Services Inc

Alan,

Has the satisfaction been recorded yet? if so, please send over a copy.

David Palace, Esq.

LAW OFFICE OF DAVID PALACE

383 Kingston Avenue #113

Brooklyn, NY 11213

Tel: 347-651-1077

Fax: 347-464-0012

------------

This e-mail and any attachments are confidential and are intended solely for the use of the addressee(s). This communication may contain material that is protected by the attorney-client privilege or other privileges or doctrines. If you are not the addressee or an addressee's agent, you may not use, disseminate, forward, print, or copy this e-mail; doing so may violate the addressee's rights. If you have received this e-mail in error, please notify us immediately.

IRS Circular 230 disclosure: Any tax advice contained in this communication (including any attachments or enclosures) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication. (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax practitioners.)

On Wed, Mar 28, 2018 at 6:27 PM, David Palace <davidpalaceesq@gmail.com> wrote:

> Alan,
>
> Kindly record on my clients behalf and send me confirmation of same.
>
> David Palace, Esq.
>
> LAW OFFICE OF DAVID PALACE